UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

MARISELA AGUILAR, et al.,

     Plaintiffs,

v.                                        Civ. No. 16-050 WJ/GJF

MANAGEMENT & TRAINING
CORPORATION, doing business as MTC,

     Defendant.

**PROPOSED FINDINGS AND
RECOMMENDED DISPOSITION**

On September 26, 2016, Plaintiffs filed their "First Amended Opposed Motion and Memorandum in Support of Judicially Supervised Notice Under 29 U.S.C. § 216(b)" ("Motion"). ECF No. 55.  On October 12, 2016, Defendant filed its "Response to Plaintiffs' First Amended Opposed Motion and Memorandum in Support of Judicially Supervised Notice Under 29 U.S.C. § 216(b)" ("Response").  ECF No. 64.  Plaintiffs filed their Reply on October 26, 2016.  ECF No. 69.  The Court ordered additional briefing [ECF No. 79], with which Plaintiffs complied on November 28, 2016.  ECF No. 84.  With that filing, Plaintiffs' Motion became ripe for ruling.[1] Having reviewed the record, the parties' briefing, and extant case law, the undersigned recommends that Plaintiffs' Motion be **GRANTED IN PART** and **DENIED IN PART**.  The Court's reasoning follows below.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

     Defendant Management and Training Corporation ("MTC") provides guards for the

---

[1] On September 27, 2016, U.S. District Judge William P. Johnson referred Plaintiffs' Motion to the undersigned. ECF No. 56.

Otero County Prison Facility ("the Prison") near Chaparral, New Mexico.  Pls.' Mot. 4, ECF No. 55.  At the time Plaintiffs' Motion was filed, Plaintiffs were twenty-six current or former employees of MTC who worked at the Prison between January 2013 and the present.[2]  *Id.*  On January 22, 2016, Plaintiffs filed this action[3] alleging violations of wage and overtime laws under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19 (2012), and the New Mexico Minimum Wage Act ("NMMWA"), N.M. STAT. ANN. §§ 50-4-19 to 50-4-30 (2016).[4]  In their Amended Complaint [ECF No. 10], Plaintiffs allege that they "were not paid for certain time worked for [Defendant], resulting in Plaintiffs not being paid statutory overtime and base compensation as required by law."  Pls.' Am. Compl. 2, ECF No. 1.  In addition, Plaintiffs assert that they "have actual knowledge that [Defendant] employed other employees in the same or similar positions, and paid them pursuant to the same improper practices."  *Id.* at 7.

In support of their claim, Plaintiffs have attached eight declarations, each from a currently or formerly-named Plaintiff.  Each declaration details the declarant's claims as well as facts supporting a collective action.  *See* Pls.' Mot. Exs. B-I.  Generally, the declarations describe two categories of alleged FLSA violations.  First, Plaintiffs allege they are not paid for time on duty gathering and securing equipment and passing through prison security areas.  Pls.' Reply 2,

---

[2] Since the time Plaintiffs' Motion was filed, there has been extensive litigation, including filings and rulings on dispositive motions.  *See* ECF Nos. 71, 80, 85, 97.  In a recent order, Judge Johnson dismissed Plaintiff Juan Coronel with prejudice, and Plaintiffs Eric Enriquez and Robert Gallegos without prejudice.  Order, Dec. 20, 2016, at 7, ECF No. 97.  Additionally, Plaintiffs have stipulated to the dismissal of numerous Plaintiffs, including Ivan Gurrola, Victor Ortiz, Noemi Mendoza, *See* Pls.' Report 3, ECF No. 90, and Juan Barrios.  *See* Pls.' Report 2, ECF No. 95.  Although Plaintiff Gurrola has been dismissed, his declaration, signed under penalty of perjury, has still been considered as part of Plaintiffs' Motion, as his dismissal does not diminish the declaration's competence as evidence.  *See infra,* p. 7 nn. 9-10.

[3] Plaintiffs filed their Amended Complaint on January 22, 2016 [ECF No. 3], one day after filing their Original Complaint.  ECF No. 2.

[4] Plaintiffs' Motion does not request certification of a class for purposes of his state law claims under Federal Rule of Civil Procedure 23.  Thus, this Order will address only FLSA collective action certification.

ECF No. 69.  By their estimation, this time is "integral and indispensable" to their core function as prison guards, and therefore compensable.  *Id.  See Steiner v. Mitchell*, 350 U.S. 247, 256 (1956) (holding that activities performed either before or after the regular work shift are compensable under the FLSA if they are an integral and indispensable part of the employees' principal activities).  Secondly, Plaintiffs contend "that MTC utilizes a timekeeping practice that persistently works in favor of MTC and against the prison guards; specifically, MTC almost always rounds off in its favor to reduce payment for the time worked by Plaintiffs."  Pls.' Reply 2.

Through the instant Motion, Plaintiffs seek conditional certification of a collective action under 29 U.S.C. § 216(b)[5] for Defendant's alleged violations of 29 U.S.C. § 207.[6]  Pls.' Mot. 1-17.  Furthermore, they propose a collective consisting of "[a]ll current and former [p]rison [g]uards who worked for MTC at any time between January 21, 2013[,] and the present."  *Id.*, Ex. A at 1.  According to Plaintiffs, employees in this proposed collective are similarly situated "with respect to their job requirements and with [respect] to their pay provisions," Pls.' Mot. 11, and "have been and continue to be required to perform preliminary and post-liminary work

---

[5]  The statute provides, in relevant part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . . .  An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself and themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b) (2012).

[6] Section 207(a) of the FLSA requires employers to pay overtime wages to regular employees for any work in excess of forty hours a week.  29 U.S.C. § 207(a) (requiring employers to generally compensate for overtime hours "at a rate not less than one and one-half times the regular rate").

activities that should be, but have not been, compensated as work time by MTC." *Id.* at 9. Lastly, Plaintiffs ask the Court to toll the applicable statute of limitations during the pendency of their Motion. *Id.* at 15-17.

Defendant urges the denial of Plaintiffs' Motion. It reasons that "[n]o collective should be certified, even conditionally, because Plaintiffs based their case on a misapprehension of the FLSA and the Portal-to-Portal Act,[7] and Plaintiffs are not similarly situated with the potential class members or themselves." Def.'s Resp. 2, ECF No. 64. Additionally, Defendant alleges that Plaintiffs "do not cite or attach any actual MTC policy, no[r] do they allege or establish a common employer practice." *Id.* at 3-4. Finally, Defendant urges this Court not to toll the statute of limitations, as "[t]he two bases for equitable tolling in the Tenth Circuit are absent in this case." *Id.* at 7.

## II.   LEGAL STANDARD

Under section 216(b) of the FLSA, an individual employee or group of employees may bring claims against their employer on behalf of employees who are "similarly situated" to them. 29 U.S.C. § 216(b). Unlike "opt-out" class actions under Federal Rule of Civil Procedure 23, collective actions under the FLSA require affirmative consent by a current or former employee to join the class. *See id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In other words, any putative plaintiffs who wish to join an FLSA collective action must affirmatively "opt-in" to do so.

_____

[7] *See* 29 U.S.C. § 254 (2012) (providing, *inter alia*, that employers shall not be subject to FLSA liability or punishment for "activities which are preliminary or postliminary" to principal activities of employment).

Section 216(b) does not define the term "similarly situated."  However, the Tenth Circuit has approved a two-step approach for determining whether plaintiffs in a proposed opt-in collective action are "similarly situated" for purposes of section 216(b).  *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).  Under this approach, a court makes an initial "notice stage" determination about whether a group of plaintiffs are similarly situated.  *Id.* at 1102.  "That is, the court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members."  *In re Bank of Am. Wage & Hour Emp't Litig.*, 286 F.R.D. 572, 576 (D. Kan. 2012).  A court must certify a case conditionally as a collective action before plaintiffs may send notice to putative class members of their right to opt-in.  *Folger v. Medicalodges, Inc.*, No. 13–1203–MLB, 2014 WL 2885363, at *2 (D. Kan. June 25, 2014) (unpublished).

For conditional certification at the notice stage, courts "'require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'"  *Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)).  The plaintiff must establish a "reasonable basis" for his claim that there are other similarly situated employees.  *See Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008).  "At the conditional certification stage, the Court does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims."  *Bryant v. Act Fast Delivery of Colo., Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *2 (D. Colo. June 25, 2015) (unpublished).  This is a "lenient standard," *Baldozier v. American Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005), "which typically results in conditional certification of a representative class."  *Renfro v. Spartan Computer Services, Inc.*,

243 F.R.D. 431, 432 (D. Kan. 2007).

The second stage occurs after discovery is complete. *See Thiessen*, 267 F.3d at 1102–03. In the second stage, which often comes in the context of a defense motion to decertify the collective, the court applies a stricter standard of "similarly situated" to determine whether the case can proceed as a collective action. *Id.*

## III.   ANALYSIS

Plaintiffs' Motion obliges the Court to undertake two separate but related inquiries.  First, the Court must determine if a collective should be conditionally certified to proceed.  To do so, the Court examines whether Plaintiffs are similarly situated and whether they were the victims of a single decision, policy, or plan.   Secondly, should the preceding examination yield a conditional collective, the Court then must review the notice proposed by Plaintiffs, weigh the objections propounded by Defendant, and approve a final form of notice.  These analyses follow below.

### A.  Putative Collective Members Are Similarly Situated and Victims of a Single Policy Decision, Policy or Plan

As a threshold issue, the Court must determine whether Plaintiffs and putative members of the collective held similar positions.  Plaintiffs ask the Court to conditionally certify a collective comprised of all "current or former employees of the Prison between January 2013 and the present."  Pls.' Mot. 4.  By their account, the putative collective members are all similarly situated for purposes of the FLSA, in that they each:

> (1) held the same or substantially similar position as a guard;
> (2) worked on assignment by MTC at the same exact facility;
> (3) were paid on an hourly basis and treated as non-exempt in the position as guards;
> (4) worked under the same managers of MTC and/or under the direction of the same staff employed by the Prison;

> (5) worked the same types of work hours and shifts;
> (6) worked off-the-clock time that was compensable time under the FLSA
> and NMMWA, and for which they were not paid; and
> (7) had their attendance and hours tracked and recorded by MTC.

*Id.* at 4-5.[8]

In support of these contentions, Plaintiffs attach eight declarations of current or former guards at the Prison working for hourly wages.[9]  The declarations also detail that each declarant worked similar shifts, had their time tracked by MTC, worked "off the clock" time for MTC for which the declarant was not compensated, and did so with the full knowledge of their MTC supervisors.[10]  Although specifics vary between the declarations, they collectively buttress Plaintiffs' allegations that they were subject to two policies potentially prohibited by the FLSA: (1) they were required to spend time on duty inside the prison, without pay, before and/or after their shift, gathering and securing equipment and passing through prison security areas; and (2) MTC utilizes a timekeeping practice known as "rounding" that may work in favor of MTC and

---

[8] Plaintiffs list additional facts in support of class certification, but they are largely argumentative or tautological. Relevant similarities appear herein.  *See* Pls.' Mot. 4-5, ECF No. 55.

[9] *See id.*, Ex. B ¶¶ 4-13 (Declarant Aguilar - current guard at the Prison, paid by the hour); Ex. C ¶¶ 4-14 (Declarant Carranza - current guard at the Prison, paid by the hour); Ex. D ¶¶ 4-13 (Declarant Guerrero - current guard at the Prison, paid by the hour); Ex. E ¶¶ 4-13 (Declarant Gurrola - current guard at the Prison, paid by the hour); Ex. F ¶¶ 4-14 (Declarant Hayes - current guard at the Prison, paid by the hour); Ex G. ¶¶ 4-14 (Declarant Vasquez - current guard at the Prison, paid by the hour); Ex. H ¶¶ 4-13 (Declarant Hernandez - current guard at the Prison, paid by the hour); Ex. I ¶¶ 4-13 (Declarant Ordaz - former guard at the Prison, paid by the hour).

[10] *See id.*, Ex. B ¶¶ 9-18 (Declarant Aguilar – working graveyard shift, spending twenty-five (25) minutes or more per day working off-the-clock, with her supervisors' knowledge); Ex. C ¶¶ 9-19 (Declarant Carranza – working graveyard shift, spending twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge); Ex. D ¶¶ 9-18 (Declarant Guerrero – working 6:00 a.m. to 2:00 p.m., spending twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge); Ex. E ¶¶ 9-18 (Declarant Gurrola – working 6:00 a.m. to 2:00 p.m., spending twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge); Ex. F ¶¶ 9-18 (Declarant Hayes – working 6:00 a.m. to 2:00 p.m., spending twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge); Ex G. ¶¶ 9-18 (Declarant Vasquez – working 6:00 a.m. to 2:00 p.m., spending twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge); Ex. H ¶¶ 9-18 (Declarant Hernandez - working graveyard shift, spending twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge); Ex. I ¶¶ 9-18 (Declarant Ordaz – worked 6:00 a.m. to 2:00 p.m. shift prior to leaving MTC, and spent twenty-five (25) minutes or more per day working off-the-clock, with his supervisors' knowledge).

to the detriment of the guards, thereby depriving them of lawfully compensable labor.  *See* Pls.'
Reply 2; *see generally* Pls.' Mot. Exs. B-I.

Defendant challenges Plaintiffs' attempt at certification.  While Defendant effectively
concedes that the declarants held similar positions, it expends considerable effort attempting to
disprove that Plaintiffs were together the victims of a single decision, policy, or plan.  Defendant
asserts that "Plaintiffs do not cite or attach any actual MTC policy, nor do they allege or establish
a common employer practice."  Def.'s Resp. 3-4.  To support this assertion, Defendant catalogs
discrepancies between the declarations, including such minutiae as: (1) whether a shift lieutenant
is present each day when the declarants end their shift, urging them to clock out before
performing extra work; (2) how two declarants claimed up to seventeen minutes of unpaid pre-
shift work, while later describing their pre-shift activities as being two or three minutes or more;
and (3) the failure of any declarants to support the allegation, contained in the First Amended
Complaint [ECF No. 3], that they were not paid for escorting prisoners to medical appointments.
*Id.* at 4-5.  Based on these inconsistencies, Defendants claim "that Plaintiffs fail to establish that
they and all other potential members of the collective are similarly situated as that concept is
applied under the FLSA."  *Id.* at 6.

In my view, Defendant's argument misses the forest for the trees.  In deciding whether to
conditionally certify an FLSA collective action, the Court does not decide the merits of the
underlying claims or resolve factual disputes.  *See Bustillos v. Bd. of Cty. Comm'rs of Hidalgo
Cty.*, 310 F.R.D. 631, 647 (D.N.M. 2015) (citing *Thiessen*, 267 F.3d at 1106–07).  Thus, while
Plaintiffs have established, through eight separate declarations, a reasonable basis[11] for believing
that the declarants and putative collective members are similarly situated, Defendant has

---

[11] Plaintiffs must establish a "reasonable basis" for their claim that there are other similarly situated employees.  *See
Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1260 (11th Cir. 2008).

improvidently focused on attacking Plaintiffs' claims and highlighting factual inconsistencies. Although these attacks may be effective at a later stage in the litigation, neither the claims themselves nor these factual disputes are ripe for the Court's review now.  *See id.*  Rather, such attacks are perhaps more appropriately levied in a motion to dismiss or a motion to decertify the collective action.

Applying only the threshold level of scrutiny appropriate to the first stage of FLSA collective action certification, the Court recommends that the presiding judge conclude that Plaintiffs have met their burden of establishing that they and other putative collective members are similarly situated insofar as they are or were guards at the Prison overseen by MTC, and through two discrete policies of MTC, may have been deprived of proper remuneration under the FLSA.  The Court emphasizes that it confined its review to the lenient standard of the first or "notice" step of the "ad hoc" certification process.  Generally, at this initial stage, certification is appropriate where all employees work for the same entity, at the same location, with the same job titles, performing substantially the same job duties, and are subject to the same policies and procedures. *See Rodarte v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, No. 14-CV-193 JAP/SCY, 2014 WL 10298032, at *3 (D.N.M. Oct. 20, 2014) (unpublished).  Such is the case here.

The Court's finding is supported by the recent District of New Mexico case, *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.* ("*Bustillos*").  *See* 310 F.R.D. at 631.  There, correctional officers, sergeants, and lieutenants at the Hidalgo County Detention Center, along with county dispatchers, sued Hidalgo County on numerous grounds, including FLSA violations.  *Id.* at 637. The plaintiffs claimed Hidalgo County required them to perform preliminary and postliminary duties without pay, and moved for certification of a collective under the FLSA.  *See id.*  After a

characteristically exhaustive review of the facts and relevant case law, U.S. District Judge James Browning found it sufficient for FLSA certification that "all employees in each subclass perform substantially similar job duties at one single facility, overseen by a single administrator who implements uniform policies common to all proposed class members." *Id.* at 668.   Having established that the employees were similarly situated, the Court reasoned that it "should consider any further dissimilar employment settings among proposed class members at the second stage of the Tenth Circuit's two-step analysis, after completing discovery." *Id.* (citing *Thiessen*, 267 F.3d at 1103).   "At the initial stage," the Court opined, "the plaintiffs 'need only show that [their] positions [are] similar, not identical to the positions held by the putative class members.'" *Id.* (citing *Pritchard v. Dent Wizard Int'l, Corp.*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).   Because plaintiffs had made that showing – as they have in the instant matter - Judge Browning conditionally certified the collective for FLSA purposes.   The same result should obtain here.

### B.  Class Notice

As part of their Motion, Plaintiffs also ask the Court to approve the notice they intend to distribute to putative collective members.   To support that request, they have attached a proposed form of notice to their Motion.   *See* Pls.' Mot. Ex. A.   In response, Defendant propounded ten (10) distinct challenges to the proposed notice.   Def.'s Resp. 10-15.   But, rather than responding to these routine and customary objections, Plaintiffs eschewed any direct response, and elected instead to educate the Court on how these types of cases are handled "in reality."   Pls.' Reply 11-12.   After an Order from this Court directing them to file responses to Defendant's objections, Plaintiffs complied on November 28, 2016.   ECF No. 84.

Based on Plaintiffs' supplemental briefing, the universe of objections has contracted, albeit narrowly.  First, Plaintiffs concede Defendant's objection that notice should be "limited to the group in the First Amended Complaint, i.e., Detention Officers who worked for MTC at Otero County Prison Facility."   Def.'s Resp. 10.  *See* Pls.' Supp. Br. 2, ECF No. 84. Nevertheless, Plaintiffs "are not conceding that the pay violations at issue in this case (*e.g.*, the rounding violations) do not also exist at other MTC facilities and Plaintiffs reserve the right to add such claims if and when the evidence supports them."  Pls.' Supp. Br. 2.  Next, in response to Defendant's objection to their references to January 21, 2013, in their proposed notice, Plaintiffs concede that "[i]f tolling is not granted by the Court," that notice should provide an eligibility date of "three years prior to the date the notice circulates."  *Id.* at 3.  *See* Def.'s Resp. 11.  For reasons detailed *infra*, this Court does not recommend tolling the statute of limitations in this case, and therefore **RECOMMENDS**, based on these two concessions, that notice issue to "current and former Detention Officers of MTC who worked at Otero County Prison Facility at any time in the three years prior to the date of the mailing of this notice."

Notwithstanding these areas of concurrence, eight disputes persist between the parties. Specifically, Defendant objects as follows to Plaintiffs' proposed method and form of notice: (1) that using the case caption and signature line are inappropriate; (2) the notice should communicate to recipients the Court's neutrality; (3) defenses should be included along with a statement of the claims; (4) recipients should be notified of potential costs if their suit is unsuccessful; (5) all references to NMMWA should be stricken; (6) the proposed opt-in period is unduly long and burdensome; (7) the mention of litigation being in its early stages is erroneous and should be amended; and (8) Plaintiffs' request for personal identifiers is overly broad and

intrusive.  Def.'s Resp. 10-15.  Following a summary of relevant law, these contentions will be discussed and recommendations will be made *seriatim.*

### 1.  Notice Standard

The FLSA's provisions "are remedial and humanitarian in purpose." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).  To join as a plaintiff in an action to recover unpaid wages, similarly-situated, concerned employees must consent in writing. 29 U.S.C. § 216(b).  Accordingly, counsel representing parties in FLSA actions send prospective class members notices to inform them about the lawsuit.  Employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  District courts have discretion to approve the content of FLSA class notices.  *Id.* at 170 (interpreting FLSA provisions to determine notice procedures under the Age Discrimination in Employment Act).

### 2.  Parties' Specific Points of Disagreement as to Formal Content of Notice

#### a.  Case caption and signature line

Initially, Plaintiffs included in their proposed notice both this case's caption and a signature line for the Court.  Pls.' Mot. Ex. A at 1, 4.  Defendant objected to this approach, and suggested instead that the notice "should be on the letterhead of Plaintiffs' lawyers and with the signature of those lawyers [rather than the Court] at the end."  Def.'s Resp. 12.  Plaintiffs have subsequently conceded the disagreement concerning the Court's signature line, but maintain that a case caption at the inception of the notice is appropriate.  Pls.' Supp. Br. 4-5.

To support their position, Plaintiffs cite to numerous district court cases within the Tenth

Circuit where case captions were allowed in the final form of notice. *See id.* at 4 n.5. For its part, Defendant directs the court to a single case from Illinois, *Jirak v. Abbot Labs., Inc.*, 566 F. Supp. 2d 845, 850-51 (N.D. Ill. 2008), for the proposition that including the case caption "would give recipients the impression that the Court lends its imprimatur to the lawsuit and would violate the requirement of judicial neutrality." Def.'s Resp. 11. Unfortunately for Defendant, it has misread the only case it cites in support of its tenuous position. In *Jirak*, the court looked unfavorably on the plaintiffs' proposed notice, the very first line of which read "United States District Court for the Northern District of Illinois." *Jirak*, 566 F. Supp. 2d at 851. The court reasoned that "[t]his language could suggest to potential plaintiffs that the [c]ourt has lent its imprimatur to the merits of the case," and opined further that "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of an action." *Id.* (citing *Hoffman-La Roche*, 493 U.S. at 174). Thus, the court ordered the plaintiffs to either "remove this heading from the notice or, alternatively, *include the entire caption of the case so that it is clear the notice is a court document and not some type of letter from the [c]ourt*." *Id.* (emphasis added).

Here, the Court is cognizant of the need to both: (1) communicate its neutrality, and (2) convey that the notice itself is a court document. Based on the recommendation made within this document and extant case law, the Court is convinced that the inclusion of a case caption achieves the latter without risking the former. *See Creten-Miller v. Westlake Hardware, Inc.*, No. 08-2351-KHV, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009) (unpublished) (approving use of case caption and number); *Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *11 (D. Kan. Mar. 28, 2011) (unpublished) (same). Accordingly, the undersigned **RECOMMENDS** that the presiding judge allow the inclusion of the case caption in the notice to

putative collective members.

### b. Communication of the Court's neutrality

Next, Defendant opposes Plaintiffs' proposed notice on the ground it "should include a statement that the Court has not ruled on the merits of the litigation." Def.'s Resp. 12. Defendant proposes that in "its own section," the notice should state "THE COURT HAS NOT TAKEN A POSITION ON THE MERITS OF THE LAWSUIT." *Id.* In response, Plaintiffs note that their proposed notice already contains similar language, apprising putative collective members in bold face and all caps, that "the Court has not yet taken any position in this case regarding the merits of Plaintiffs' Claims or the Merits of Defendant's Defenses." Pls.' Supp. Br. 5. Further, they note language in the proposed notice cautioning individuals "there is no assurance at this time that the Court will grant any relief in this case." *Id.*

Given the language already present in Plaintiffs' proposed notice, no live controversy exists here. Thus, the undersigned **RECOMMENDS** that the presiding judge deny this objection as moot, provided Plaintiffs maintain the two separate mentions of neutrality currently present in their proposed notice.

### c. Inclusion of MTC's defenses

Defendant further contends that notice to the collective should include a recitation of its defenses. Def.'s Resp. 12-13. In support, it provides two case citations for the proposition that "proportionality is the touchstone when it comes to descriptions of the parties' positions." *Id.* at 12 (citing *Hernandez v. Merrill Lynch & Co.*, No. 11 Civ. 8472 (KBF), 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012) (unpublished); *Wass*, 2011 WL 1118774, at *10). Plaintiffs counter that such "requests are improper and designed to have a chilling effect on the participation of

prospective plaintiffs." Pls.' Supp. Br. 6. They also aver, by reference to five cases where only a summary denial of the claim was allowed, that their "inclusion of summary denial language in the proposed [n]otice is fully consistent with how courts in general and courts in the 10th Circuit address this issue." *Id.* at 6-7 (citations omitted).

For their part, Plaintiffs suggest a full, single-spaced paragraph to describe their claims, while according Defendant only one summary denial sentence. Defendant accurately views this arrangement as disproportionate. *See* Def.'s Resp. 12-13. Moreover, Plaintiffs' proposal is totally inconsistent with the exemplars attached to Plaintiffs' own Supplemental Brief. In those notices, the description of the suit is never so detailed as that now proposed by Plaintiffs, nor are the opposing parties' defenses nearly so abbreviated. *See* Pls.' Supp. Br. Ex. 2 at 2 (two sentences for plaintiff, one for defendant), Ex. 3 at 2 (two sentences for plaintiff, two for defendant), Ex. 4 at 1-2 (three sentences for plaintiff, two for defendant), Ex. 5 at 2 (three sentences for plaintiff, two for defendant).

Defendant suggests including not only a denial of Plaintiffs' claims, but a four-sentence paragraph explaining its position, including a third sentence referencing its anticipated defense under the Portal-to-Portal Act and a fourth sentence advising putative collective members that, by the time they receive the notice, Defendant "may have filed a formal request for dismissal of the case." Def.'s Resp. 12-13. Plaintiffs naturally assert that this language poses a serious risk of chilling the propensity of putative collective members to opt into the case. Pls.' Supp Br. 6. In fact, on a related issue, a district court in Kansas held that "[w]ithout a showing that any particular counterclaim or defense has potential merit, the concerns about a chilling effect outweigh the benefit of making a generic reference to counterclaims." *In re Bank of Am. Wage*

*& Hour Employment Litig.*, 286 F.R.D at 600.  The Court finds this logic *apropos* in the instant

matter, for at this preliminary stage of litigation, the merits of Defendant's defenses have yet to

be resolved.  Further, a notice that cautions that the Defendant may already have filed motions to

dismiss likely would chill participation by the putative collective members.

Therefore, in the interests of proportionality and communicating information to putative

collective members without chilling their decision whether to opt into this suit, the Court

**RECOMMENDS** the presiding judge allow both parties two sentences to either explain the suit

or communicate their specific denials.  Both extant case law and Plaintiffs' example notices

make clear that no further account is necessary.

### d.  Notification of costs

Additionally, Defendant contends "Plaintiffs' proposed notice is incomplete insofar as it

suggests that there is no risk associated with consent."  Def.'s Resp. 13.  To cure this alleged

defect, Defendant suggests language be added similar to that used in *Wass*, 2011 WL 1118774, at

*8, communicating to potential collective members as follows: "[i]f you join the lawsuit but you

lose, court costs and expenses (not including MTC[']s attorney fees) may be assessed against

you."  Def.'s Resp. 13.  Plaintiffs counter by characterizing this as an "attempt to suppress the

opt-in rate," and argue such a warning "should therefore not be included in the [n]otice."  Pls.'

Supp. Br. 7-8.

In a recent District of New Mexico case, counsel advanced similar arguments on both

sides.  *See Saenz v. Rod's Production Services, LLC et al.*, Civ. No. 2:14-cv-525-RB/GBW

(D.N.M. filed Jun. 2, 2014) (unpublished).  There, U.S. District Judge Robert C. Brack opined

that "[i]n the Tenth Circuit, courts regularly include a notice that plaintiffs may have to pay court

costs if they do not prevail." *Id.*, Order, Mar. 6, 2015, at 4-5, ECF No. 72 (citing *Creten-Miller*, 2009 WL 2058734, at *3-4; *Wass*, 2011 WL 1118774, at *8).  Accordingly, Judge Brack ordered the plaintiffs in Saenz to insert the following language into their class notice:

> If you choose to join this lawsuit, you will be bound by any judgment, favorable or unfavorable, on any claim you may have under the FLSA. If you win, you may be eligible to share in the monetary award, including overtime wages and liquidated damages. If you lose, no money will be awarded, and you will not be able to file another lawsuit regarding the matters raised in this lawsuit. Also, if plaintiffs lose, they could be responsible for paying court costs and expenses.

*Id.* at 5.

Because Judge Brack's approach reasonably notifies putative collective members of both the promise and peril of opting into the lawsuit, the undersigned **RECOMMENDS** the presiding judge direct Plaintiffs to append similar language to their class notice.

### e.   Reference to NMMWA

Defendant also objects to Plaintiffs' reference to the NMMWA throughout their proposed notice.  Def.'s Resp. 13.  Since Plaintiffs' Motion seeks relief exclusively under the FLSA, Defendant challenges that any mention of the NMMWA should "be omitted and dealt with only if necessary in due course."  *Id.*  Plaintiffs respond that "the references to NMMWA in Plaintiffs' proposed [n]otice are merely descriptive of the nature of the lawsuit, applicable anti-retaliation protections, and statutes of limitations," and as such, do nothing more "than help educate putative plaintiffs about the lawsuit."  Pls.' Supp. Br. 8-9.

Plaintiffs have proffered no authority to support their position, and Defendant has supplied the court with only one Northern District of California citation which only tenuously supports its position.  *See id.*; Def.'s Resp. 13 (citing *Leuthold v. Destination Am., Inc.*, 224

17

F.R.D. 462, 470 (N.D. Cal. 2004)).  Given the absence of authority compelling a result in either direction, this Court finds the reference to the NMMWA, at this juncture, to be improvident. Although this collective may be certified for purposes of the FLSA, this litigation's certification under Rule 23 is neither close in time nor certain to succeed.  Thus, to apprise putative collective members of rights, protections, and statutes of limitations under NMMWA – which may *never* apply to them – cannot be said to carry out the purposes of FLSA certification.  Accordingly, the undersigned **RECOMMENDS** the presiding judge direct that the FLSA notice to putative collective members make no mention of the NMMWA.

### f.   Opt-in period

Plaintiffs and Defendant also disagree on the time period that putative collective members should be allocated to file their opt-in notices.  While Defendant seeks a brief, thirty (30) day period for opting in, Plaintiffs originally sought 120 days, which they have now reduced to ninety (90).  *See* Def.'s Resp. 14; Pl.'s Supp. Br. 9.  At the Rule 16 scheduling conference held in April 2016, this Court ruled that "Plaintiffs shall also be allowed a reasonable time – **not to exceed ninety (90) days after notice goes out** – for similarly-situated Plaintiffs to 'opt in' to the suit."  Order, Apr. 28, 2016, ECF No. 20 at 1 (emphasis in original).  Nothing in the parties' briefing since that time has persuaded the Court that the notional notice period should be altered, and the undersigned **RECOMMENDS** that the presiding judge order an opt-in period of ninety (90) days.

### g.   Language regarding the stage of litigation

Defendant next objects to the section of the proposed notice where Plaintiffs describe this suit as being "in the early stages of litigation."  Def.'s Resp. 14.  Defendant not only finds the

description to be "quite misleading," but further proposes the inclusion of language stating "[t]his lawsuit is nearing completion and is or soon will be at the stage in which MTC formally seeks its dismissal and/or the dismissal of individual plaintiffs, including you." *Id.* at 14-15. Through their Supplemental Brief, Plaintiffs concede that "the simplest way to resolve the issue is simply to eliminate any statement about the stage of litigation . . . ." Pls.' Supp. Br. 10. This Court agrees with Plaintiffs, and **RECOMMENDS** that the presiding judge order that the notice include no mention of the stage of litigation.

### h.  Personal identifiers to be disclosed

Lastly, Defendant challenges Plaintiffs' request for personal identifiers.  By Defendant's estimation, in the event this collective is certified, the data it should be ordered to turn over "should only include names, last known addresses, and last known phone numbers."  Def.'s Resp. 15.  It explains, "Plaintiffs have no need or right to have the personal email addresses (which not all [Defendant's] employees even have or provide to Defendant) and Social Security numbers of other employees, which would invade their privacy."  *Id.*  Although Plaintiffs were ordered to respond to this and all other objections, *see* ECF No. 79, Plaintiffs propounded no response to this request.

Based on Plaintiffs' failure to respond to this Court's Order, combined with its failure to demonstrate the necessity of obtaining either the Social Security numbers or personal email addresses of putative collective members, the undersigned **RECOMMENDS** that Defendant only be required to disclose names, last known addresses, and last known phone numbers for putative plaintiffs.  In keeping with other cases within the circuit, should the necessity for these identifiers arise, Plaintiffs may approach the Court with a separate motion for additional data at

the appropriate time, and with a competent offer of proof.  *See Greenstein v. Meredith Corp*., 948 F. Supp. 2d 1266, 1271 (D. Kan. 2013) (denying a request for social security numbers without a showing of necessity, but allowing plaintiff to approach the court later, should necessity arise); *Allen v. Mill-Tel, Inc*., No. 11-1143-EFM-KGS, 2012 WL 2872160, at *8 (D. Kan. July 12, 2012) (unpublished) ("If Plaintiffs find that they are unable to locate potential class members using names, telephone numbers, and addresses, they should make an appropriate motion detailing their need for the more private information.").

### C.  Equitable Tolling

In addition to seeking conditional certification, Plaintiffs also seek to toll the statute of limitations "during the notice process."  Pls.' Reply 10.  They reason that tolling the statute will "assure that putative plaintiffs are not prejudiced by the passing of time while the contest over whether conditional certification should be granted plays out, and the form of the [n]otice is debated."  *Id.*  Plaintiffs, however, offer little support for their position.

First, Plaintiffs make an oblique argument that tolling should occur based on Defendant's delay in producing accurate mailing information for potential opt-in plaintiffs.  See Pl.'s Mot. 15. This argument is particularly odd, as one of the arguments for granting their Motion is that "discovery is not necessary prior to a determination on the issue of Section 216(b) notice."  *Id.* at 12.  Thus, on the one hand they argue that tolling should be granted based on Defendant's delay in turning over mailing information, while on the other, they claim no information need be exchanged by the parties prior to the Court's determination of their Motion.

Next, they cite to *Schultz v. American Family Mut. Ins. Co.*, 2005 WL 5909003 (N.D. Ill. Nov. 1, 2005) (unpublished) for the proposition that the statute of limitations should be tolled for

potential collective members under circumstances where they are unable to discover the Fair Labor Standards Act "FLSA" violations of their employer. Pl.'s Mot. 16. They cite to another unpublished case, *Struck et al. v. PNC Bank N.A.*, 2013 WL 1142708 (S.D. Ohio 2010), for the same point, and additionally for the notion that tolling should be granted where "potential plaintiffs lacked actual and constructive notice of the case and therefore were unaware of their rights to join the case and could not have filed consent." *Id*. They believe the same situation exists here, "where Plaintiffs have asserted (and demonstrated with sworn Declarations) that there are hundreds of potential opt-ins to this action who are unable to discover [Defendant's] alleged FLSA violations without being notified of this lawsuit." *Id*. at 16-17.

Defendant counters that the "two possible bases for equitable tolling in the Tenth Circuit are absent from this case." Def.'s Resp. 7. These bases, under Tenth Circuit precedent, include "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* To demonstrate the point, Defendant uses Plaintiffs' own case citation against them. Indeed, while Plaintiffs enlist *Schultz* to support the premise that tolling should occur for potential collective members unable to discover their employers' FLSA violation, Defendant emphasizes that the court actually rejected that premise, finding tolling inappropriate, and stating that "[i]gnorance of a lawsuit is not the same as ignorance of a claim." *Id.* (citing *Schultz*, 2005 WL 5909003, at *5) (internal quotation marks omitted). Defendant also directs the Court to a recent District of Colorado case, *Young v. Dollar Tree Stores, Inc.*, where the Court found that putative collective members "are presumed to be aware of the facts and circumstances of their employment," and that it is those facts, not

knowledge of a lawsuit, that begins the accrual of a claim.  *Id.* (citing *Young v. Dollar Tree Stores, Inc.*, No. 11-CV-1840-REB-MJW, 2013 WL 1223613, at *5 (D. Colo. Mar. 25, 2013) (unpublished)).   Defendant acknowledges that Plaintiffs supply a handful of cases from jurisdictions outside the Tenth Circuit to support their tolling argument, but they contend these are "out of step with Tenth Circuit law on equitable tolling," Def.'s Resp. 12, and to prove the point, they offer numerous case citations from within and without the Tenth Circuit where courts have refused to toll the statute of limitations in FLSA cases.  *Id.* at 9.

### 1.   Standard for tolling state of limitations

Equitable tolling permits courts to extend statutes of limitations on a case-by-case basis to prevent inequity.  *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998); *Santos ex rel. Beato v. United States*, 559 F.3d 189, 197 (3d Cir. 2009).  The majority of courts have held that equitable tolling is an available remedy under the FLSA, provided that the circumstances warrant application of the doctrine. *See, e.g., Moreno v. United States*, 82 Fed. Cl. 387, 402 (2008)

Federal courts "have typically extended equitable relief only sparingly."  *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990).  The Tenth Circuit has held that equitable tolling of time limitations is appropriate where the circumstances of the case "rise to the level of active deception," *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838-39 (10th Cir. 1979); *accord Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 615 (10th Cir. 1988), "where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts,'" *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (quoting *Carlile v. S. Routt Sch. Dist*. RE 3-J, 652 F.2d 981, 986 (10th Cir. 1981)) (additional citations omitted); *accord Gray*, 858 F.2d at 615, or

22

where "a plaintiff . . . 'has in some extraordinary way been prevented from asserting his or her rights,'" *Martinez*, 738 F.3d at 1110 (quoting *Wilkerson v. Siegfried Ins. Agency, Inc.*, 683 F.2d 344, 348 (10th Cir. 1982)); *Gray*, 858 F.2d at 615.  As a general rule, courts are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his [or her] legal rights."  *Irwin*, 498 U.S. at 96 (citation omitted).  The decision to invoke equitable tolling in a particular case lies exclusively within the sound discretion of the trial court.  *See Stransky v. HealthONE of Denver, Inc*., 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012).

## 2.  Tolling is unwarranted in this case

In a recent case from this district, *Abrams v. City of Albuquerque*, No. 10-0872 MV/RHS, 2014 WL 11497810 (June 26, 2014) (unpublished), U.S. District Judge Martha Vazquez had occasion to examine the development of tolling law as applied to FLSA cases.  In *Abrams*, the plaintiffs made no argument that they had been deceived or lulled into inaction by the defendant. Rather, they posited "that the certification process itself constitutes an 'extraordinary' circumstance that justifies the application of equitable tolling."  *Id.* at *3.

Following her review of relevant cases from across the country, Judge Vazquez reasoned as follows:

> A review of the decisions answering the question whether litigation delay during the certification process constitutes an "extraordinary" circumstance that justifies equitable tolling suggests that courts generally reach one of four conclusions: (1) courts hold that equitable tolling is not available for litigation delays caused by the certification process; (2) courts decide that equitable tolling pending certification is not applicable to an entire class of putative plaintiffs but invite any individual plaintiff to come forward with specific proof establishing that the statute of limitations should be tolled for that plaintiff; (3) courts determine that notice may be sent to putative class members as if the court had tolled the statute of limitations during its decision process but reserve ultimate ruling

23

> on the question for any individual plaintiff for a later date; or (4) courts
> conclude that equitable tolling during the certification process may apply
> to all putative class members.

*Id.* Ultimately, Judge Vazquez decided to toll the statute of limitations and cited two bases for doing so. First, she found the plaintiffs had diligently pursued the tolling of the statute of limitations since the filing of their second motion for certification (she noted they had not mentioned tolling in their first motion). *Id.* at 8. Additionally, she felt that a one-year judicial delay in deciding the motion represented an exceptional circumstance demanding tolling. Or, as she stated, "[t]he Court concludes that Plaintiffs' loss of twenty of the 36-months available under the statute of limitations constitutes an 'extraordinary' circumstance that supports tolling the statute of limitations." *Id.* at 11.

Applying the reasoning of *Abrams* to the instant matter, this Court finds no justification for tolling the statute of limitations. Even if this Court were to assume that the FLSA litigation process itself may represent an exceptional circumstance meriting tolling of the statute, the justifications cited in *Abrams* that allowed tolling are conspicuously absent here. First, Plaintiffs in this case *have not* diligently pursued their rights to assert equitable tolling. To the contrary, their Amended Complaint was filed on January 22, 2016. ECF No. 3. At the scheduling conference conducted by this Court on April 27, 2016, Plaintiffs' counsel stated to the Court that Plaintiffs intended to file a motion for certification *the next week.* Ct. Mins., Apr. 26, 2016, at 2, ECF No. 19. Nevertheless, Plaintiffs did not file their Motion – with its request for equitable tolling - for *five more months.* ECF No. 55 (Sept. 26, 2016). Even more strikingly, Plaintiffs' delay in responding to Defendant's objections to their form of notice caused the Motion to not become fully briefed until November 28, 2016. *See* ECF No. 84.[12] The months misspent by

---

[12] The Court could not consider Plaintiffs' Motion until Plaintiffs responded to the objections raised by Defendant in

Plaintiffs between May and November 2016 do not evince a diligent pursuit of equitable tolling, and as such, do not form a basis for tolling here.  *See Irwin*, 498 U.S. at 96 (explaining that courts generally are "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights") (citation omitted).

Additionally, Plaintiffs have no foundation for claiming judicial delay as a basis for tolling the statute of limitations.  At the time of filing, this Court will have returned its Proposed Findings and Recommended Disposition in only two months.  This contrasts sharply with *Abrams*, where the Court deliberated on certification for over a year.  *See Abrams*, 2014 WL 11497810, at *11.  A two-month delay is also readily distinguishable from the cases cited in *Abrams* which allowed for tolling based on judicial delay.  *See, e.g., McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 440, 445 (S.D.N.Y. 2012) (tolling statute after five-month judicial delay); *Owens v. Bethlemen Mines Corp.*, 630 F. Supp. 309, 312 (S.D.W. Va. 1986) (tolling statute based on eighteen-month judicial delay).  As a consequence, the nominal judicial delay in this case cannot constitute a ground for tolling the statute of limitations.

Based on the foregoing, even if the presiding judge were to find that equitable tolling could apply in an FLSA action where "extraordinary circumstances" exist, the undersigned recommends that no such circumstances be found here.  Because Plaintiffs have failed to diligently pursue their rights to equitable tolling, and because they have no grounds for claiming tolling based on judicial delay, the undersigned recommends that the presiding judge deny Plaintiffs' request to toll the FLSA's statute of limitations.

**IV. CONCLUSION**

---

its Response.  Only after the Court directed Plaintiffs to do so on November 18, 2016, ECF No. 79, and the filing of Plaintiffs' "Briefing on the Form of Notice," ECF No. 84, on November 28, 2016, did briefing on Plaintiffs' Motion become complete.

Based on the foregoing, the undersigned **RECOMMENDS** Plaintiffs' Motion [ECF No. 55] be **GRANTED IN PART** and **DENIED IN PART**.

The undersigned **RECOMMENDS** the presiding judge find and conclude that Plaintiffs have met the lenient and relatively low burden necessary to certify their FLSA collective action. Correspondingly, the undersigned **RECOMMENDS** the presiding judge certify this collective action, and once a final class notice is approved, order the notice to be distributed to putative collective members.

Further, the undersigned **RECOMMENDS** that the presiding judge order the parties to file a joint proposed class notice that conforms to the presiding judge's final order within ten (10) days of its issuance.

**IT IS SO RECOMMENDED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**