# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MARISELA AGUILAR, et al.,

    Plaintiffs,

v.                                                                            Civil No. 16-00050 WJ/GJF

MANAGEMENT & TRAINING
CORPORATION d/b/a MTC,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' MOTION TO AMEND

THIS MATTER comes before the Court upon Plaintiffs' Opposed Motion Seeking Leave to File Second Amended Complaint, filed June 30, 2017 **(Doc. 150)**. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiffs' motion is not well-taken and, therefore, is denied.

## BACKGROUND

This is a collective/class action lawsuit filed by a group of over 20 current or former employees of Defendant ("MTC") who claim they were not paid for some of their hours worked on assignment for MTC at the Otero County Prison Facility near Chaparral, New Mexico. The lawsuit asserts claims for unpaid wages and overtime, as well as other statutory damages and the recovery of attorneys' fees, under the Fair Labor Standards Act 29 U.S.C. §§ 201-219 ("FLSA") and/or the New Mexico Minimum Wage Act, N.M.S.A. §§ 50-4-1 to 50-4-33 ("NMMWA").

## DISCUSSION

As described by Plaintiffs, the proposed Second Amended Complaint withdraws claims for unpaid compensation related to hospital duty time because they have learned that this claim is

infrequent and of nominal value. The proposed complaint also clarifies that Plaintiffs' claims for improper automatic deductions for meal breaks are in fact, part of the unpaid time at issue when Transport Officers are escorting prisoners to and from that appointments outside the prison. A small number of Detention Officers are assigned at any given time to work as Transport Officers, who have the same primary duties and rate of pay as Transport Officers when assigned this task.

The proposed Second Amended Complaint also makes some minor non-substantive corrections sand clarifications, such as:

    a.    eliminating the specific number of named plaintiffs and updating some non-substantive matters, such as the fact Defendant was already served or correcting a typographical error;

    b.    using the name "detention officer" instead of "guards";

    c.    clarifying facts related to Plaintiffs' pre- and post-shift claims (*see* Pltffs' Ex. A, ¶¶20 & 26);[1] and

    d.    adding one sentence to the rounding allegation in ¶27 of the proposed complaint (Pltffs' Ex. A).

**I.**    **Legal Standard**

A party may amend its pleading only with the opposing party's written consent of the court. Fed. R. Civ. P. 15(a)(2). The Court is directed to "freely give leave when justice so requires." *Id*. Although leave to amend is generally freely granted, it will not be permitted where the proposed amendment will be futile, or where the request is untimely and unduly prejudicial to the opposing part. *Castleglen, Inc., et al. v. R.T.C.*, 984 F.2d 1571 (10th Cir. 1993).

---

[1] Because both parties use lettered exhibits, the Court will refer to the exhibits by the party offering the exhibit as well as the number. Defendant e-filed the seven exhibits attached to the response (identified as Exhibits A-G) as one exhibit on the docket (Doc. 158-1), so that all seven exhibits are filed together as Doc. 158-1 and thus cannot be distinguished as separate document numbers.

## II. Analysis

Plaintiffs contend that the proposed amendment of the current complaint is neither untimely, prejudicial nor futile. Defendant does not oppose the withdrawal of the hospital duty claim, but otherwise opposes the amendment, contending that the motion is late and lacks justification.

To begin with, Defendant contends that some of the changes proposed by Plaintiffs are essentially stylistic, are not necessary and therefore do not warrant a new complaint, for example where the proposed language notes that a few Plaintiffs have been dismissed since the first amended complaint was filed, and that there are no longer 26 named Plaintiffs. The Court agrees with Defendant that many of the proposed changes are unimportant and so these proposed changes in themselves are not sufficient as a basis to grant Plaintiffs' motion. As Defendant notes, the main event in this motion is the claim related to an automatic deduction for meal breaks. As the analysis will unfold below, the Court finds some merit to Defendant's arguments on the timeliness and prejudicial impact of Plaintiffs' motion, but is most persuaded by Defendant's argument on the issue of futility.

### A. Timeliness

Untimeliness of a plaintiff's motion in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir.1995). No finding of a prejudice to the opposing party is required. *Woolsey v. Marion Lab., Inc.*, 934 F.2d 1452, 1462 (10th Cir.1991). "The longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court

to withhold permission to amend." *Minter v. Prime Equipment Co.,* 451 F.3d 1196, 1205 (10th Cir. 2006).

Defendant argues that Plaintiffs' request is late because it was due over one year ago. The most recent deadline for filing a motion to amend was June 15, 2016, according to an Order Setting Pretrial Deadlines (Doc. 20). Because Plaintiffs' request to amend comes after this deadline, Defendant contends that Plaintiffs must now show (1) "good cause" for seeking modification under Rule 16(b)(4) and (2) satisfaction of the Rule 15(a) standard. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n,* 771 F.3d 1230, 1240 (10th Cir. 2014) (where plaintiffs did not satisfy Rule 16 standard, court did not consider Rule 15 standard). In *Gorsuch,* however, the Tenth Circuit noted that district courts in the circuit have imposed a good cause requirement when parties seek to amend their pleadings after a scheduling order deadline, but that the Tenth Circuit has "not yet expressly ratified that standard." *Id.* This Court therefore declines to adopt this standard here for that reason, and will instead proceed with this analysis under a Rule 15(a) analysis.

Plaintiffs claim that the current amended complaint already asserts the meal break claims, but that they were forced to file a formal motion because Defendants took the position that the current complaint should be construed to mean that meal break claims were not pled at all. *See* Doc. 150 at 2; at 4, n.2. Defendant has a different recollection, claiming that at the January 2017 depositions, Plaintiffs had considered some type of amended complaint at that time but decided against it because it was "already late" for amendment. *See* Doc. 158 at 6, n.3. Plaintiffs also take what the Court considers to be a somewhat inconsistent position, contending that detailed

4

facts regarding the unpaid meal break claims did not emerge until a May 2017 deposition.[2] The Court considers Plaintiffs' position to be inconsistent because Plaintiffs are stating that the complaint already includes the meal break claims, but at the same time claiming that they didn't discover the existence of these claims until a May 2017 deposition.

However, Defendant maintains that Plaintiffs' counsel was asking questions of Defendant's witnesses in deposition about lunch breaks for transport officers in early 2017, several months before the May 2017 deposition. *See* Deft's Ex. B (Giordano Dep.) at 23:5-20) and Deft's Ex. C (Low Dep.) at 19:23-25:18. Defendant also contends that Plaintiffs should not need anything from MTC or any outside source to make claims about meal breaks and there is no acceptable reason why those allegations were not included either in the original complaint or the first amended version. The Court tends to agree with this assessment. Plaintiffs' counsel should know what claims his clients are asserting without needing to uncover information from the opposing party. Employees who sue their employer for failure to pay overtime would know the reasons why they are bringing suit, even if they do not know the exact amount. In this case, Detention Officers who worked Transport Duty would have known, most likely prior to early 2017, that their paychecks were shorted on overtime pay because of automatic deductions taken from their paychecks even when they missed meal breaks. At the very latest, the February depositions of Ms. Low and Ms. Giordano contain testimony on this very issue. *See* Deft's Ex. B at 24; Deft's Ex. C at 22-24. It should not have taken Plaintiffs' counsel until June to wake up and realize that the meal break claims were not asserted in the complaint.

At a scheduling hearing, counsel for Plaintiff represented to the Court that paragraphs 26 or 27 already encompass the meal break claims. *See* Doc. 148 (Clerk's Min.); *see also* Doc. 147

---

[2] The Court considers Plaintiffs' position to be inconsistent because Plaintiffs are stating that the complaint already includes the meal break claims, but at the same time claiming that they didn't *discover* the existence of these claims until a May 2017 deposition.

("updated" Jt. Status Rep't, stating that "Plaintiffs believe that a broad reading of the Complaint already encompasses the claims for auto-deducted meal breaks, however, [they] intend to move for leave to clarify these claims."). Paragraphs 26 and 27 of the current complaint state as follows:

> 26. The named Plaintiffs and similarly situated individuals are (or were) also periodically required to perform other duties on an off-the-clock basis, such as in connection **with escorting prisoners to medical appointments, where they are (or were) not paid for some of their time worked.**
>
> 27. The named Plaintiffs and similarly situated individuals further lose (or lost) material amounts of time from their paid time worked based on MTC's method of "rounding" in calculating wages.

Doc. 3 (Am. Compl.), ¶¶26 & 27 (emphasis added). These allegations are connected to underpayment for the performance of duties, or the "rounding" method causing underpayment in calculating wages. The Court is not convinced that these allegations envision specific meal break claims and it is not surprising that defense counsel were not convinced, either. A more likely scenario is that Plaintiffs' counsel suddenly realized that the meal break claims were missing from the current amended complaint and then tried to rectify that oversight in late June by filing the instant motion.

A showing of prejudice is not required to deny a motion to amend for untimeliness. *Woolsey,* 934 F.2d at 1462. It appears as though Plaintiffs' counsel had sufficient knowledge about the basis for the meal break claims months ago, and unnecessarily delayed the filing of the motion. Plaintiffs' counsel blames the delay in filing this motion on defense counsel's unwillingness to agree that the meal break claims are already part of this case, but defense counsel is not required to roll over and play dead on Plaintiffs' counsel's request to amend when Plaintiffs' counsel had ample time to consider whether to add these specific claims to the complaint.

B. <u>Undue Prejudice</u>

Absent a specific finding of flagrant abuse, bad faith, or futility, the determining factor in evaluating a motion to amend should be the prejudice to the opposing party. *Phelps v. Hamilton*, 166 F.R.D. 489, 491 (D.Kan.1996). No unfair prejudice exists simply because a party has to defend against new or better pleaded claims. *See Popp Telcom v. American Sharecom,* 210 F.3d 928, 943 (8th Cir. 2000) (inclusion of a claim based on facts already known or available to both sides does not prejudice non-moving party).

Plaintiffs claim that Defendants will not be prejudiced by additional specificity and that the auto-deducted meal break claim should come as no surprise to Defendant given the context of the allegations in the current complaint. According to Plaintiffs, Defendant has been well aware of this claim since the beginning of 2017 (if not before) and has already deposed a Transport Officer who was questioned extensively about the meal break issue. *See* Pltffs' Ex. B. Plaintiffs contend that the addition of the meal break claims does not change any "key dynamics" of the case and that further discovery will not be needed. The proposed amendments would not require naming additional plaintiffs or change any deadlines or settings, nor would further clarification of the existing claims require any additional discovery. Also, Plaintiffs anticipate that additional discovery by Defendant related to meal breaks would be minimal, since Plaintiffs already have obtained personnel files, time card reports, paychecks and key policies and can supplement any separate calculations of meal break damages prior to the end of discovery, which is on July 31, 2017. *See* Doc. 141. At the same time, however, Plaintiffs offer their full cooperation for any additional discovery that needs to be done. Doc. 162 at 4, n.3.

Defendant has a different view, and contends that the proposed amendments would "change the profile of the case." Doc. 158 at 1. Defendant's position is that additional

7

discovery *would* be necessary. Even though this case is now one and a half years old and discovery is about to close, it would have to be re-opened so that Defendant has an opportunity to identify witnesses (supervisors and co-workers) to contest the allegations about any officer on transport duty working—or being required to work—through lunch. Defendant estimates additional discovery would add a couple of months to the litigation of the case.

The Court makes no finding here about whether additional discovery would be needed, nor is there any need to make further inquiry on this issue. It is safe to say that any additional discovery would indeed be prejudicial to Defendant and would also continue to delay this case that has already been fraught with discovery delays, due largely to Plaintiffs' reluctance to partake in discovery. *See* Docs. 71, 80, 85 and 97.

    C.    <u>Futility</u>

A court may properly deny leave to amend if amendment would prove futile. Futility might warrant denial of leave to amend if the amended complaint would be subject to dismissal. *Mountain View Pharmacy v. Abbott Lab*., 630 F.2d 1383, 1389 (10th Cir.1980). To determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were a Rule 12(b)(6) motion. *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2002).

Defendant contends that amendment would be futile. At Otero County Prison Facility, detention officers can fill out a time adjustment form ("Time Punch Adjustment forms" or "TPAs") if the officers believe they would not be—or have not been—fully or accurately paid. *See* Ex. E (copy of TPA form). In addition, detention officers are expected to review and time card reports that show clock-in data for a given pay period. The signature block on that form includes the statement that by signing, the officer is agreeing that he took his daily meal period. *See* Ex. F (copy of time card report).

8

Plaintiffs offer the testimony of only one Plaintiff, Hiram Escobar, in support of the motion to amend to transport duty. Doc. 150-2. Mr. Escobar testified that transport duty was a good job because there was a lot of overtime on that assignment (Pltffs' Ex. B at 48:9-20), and that supervisors frequently complained that there was too much overtime because the officers were missing too many lunches. He explained that sometimes it was difficult to fit in a lunch break. Pltffs' Ex. B at 51-13; *see also* Defts' Ex. D at 50:7 ( "Sometimes there's no time to take a lunch"). However, there is nothing in the deposition excerpts offered by Plaintiffs to support a claim that Mr. Escobar was not getting paid when he worked through meals while on transport duty. Mr. Escobar testified that if he took no lunch, Defendant MTC would not deduct an hour from his shift. Pltffs' Ex. B. at 43:20-23. Mr. Escobar also testified that for those instances where a he was not paid for a missed work break, MTC corrected the error by using the time adjustment form. He was familiar with Defendant's time adjustment process and that every time he had to use the process he was successfully paid for the time at issue:

> . . . For example, if I would have worked only eight hours and I wouldn't have taken a lunch, and I wouldn't have done a time adjustment, it would have gone to seven hours. But since I did a time adjustment, they didn't take that hour away.

Ex. B at 44:2-6.

In short, the exhibits submitted by Plaintiffs to support amending the complaint shows that when Mr. Escobar submitted an adjustment form, he was paid for missed meal breaks. There is also no suggestion based on the allegations or the facts that MTC made it difficult for a detention officer to initiate or process the adjustment. Mr. Escobar voiced no complaints about any difficulty locating the appropriate forms on which to request the pay adjustment, which were kept "up front" by the time clock or could be found in the lieutenant's office when the pile near the time clock ran out. Deft's Ex. D at 23-24.

Mr. Escobar noted that there was "a time or two" when his paycheck reflected payment for regular time instead of the overtime he worked. He testified that because the claim amounted to "just a couple of bucks" he brushed it off because there was "no reason to get a headache over it." Deft's Ex. D at 68:13-25; at 69:14-23. In his deposition, Mr. Escobar could think of only one other person in the lawsuit who was on transport duty—Plaintiff Rigoberto Rodarte. Pltff's Ex. B (Escobar Dep.) at 50:13-18; at 56:18-25. Mr. Rodarte's testimony offers nothing different, and was similar Mr. Escobar's testimony. Plaintiff Rodarte also understood the process to get paid when he worked through lunch while on transport duty. *See* Deft's Ex. G at 38-39 (discussing use of time adjustment form). Like Mr. Escobar, Mr. Rodarte testified that MTC paid him fully and accurately every time he submitted a time adjustment form because his paycheck did not reflect a missed meal break:

Q. Was there ever a situation where you filled out a time adjustment form and the company said, "No, we're not paying you for that?"

A. No, sir.

Q. Every time you used a form you've ended up being paid as requested, correct?

A. Yes, sir.

Deft's Ex. G at 39:23-25 to 40:1-5.

Mr. Escobar did mention that sometimes the time adjustment is not resolved before getting paid for that specific time period. A few times, he had to fill out a time adjustment card after he already got paid for the period and that sometimes he would not get paid on the adjustment for a month after. Deft's Ex. D at 68:10-19. However, getting paid after a pay period or the need to submit time adjustment forms in order to correct an overtime shortage cannot form the basis for an FLSA claim. Further, the time card report assumes that the employee took a meal period during their shift. *See* Deft's Ex. F. There would be no way for MTC to know that

an officer on transport duty did *not* break for lunch unless that employee advised MTC otherwise through the time adjustment process. The law simply does not render MTC liable to an employee who was not paid proper compensation for overtime work if MTC is not aware that the individual performed overtime work. *See, e.g., Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995) (reversing summary judgment for police officer suing for unpaid overtime compensation under the FLSA where officer ignored specific procedure for claiming overtime and thus city did not have constructive knowledge that officer was working overtime); *Forrester v. Roth's I.G.A. Foodliner, Inc.,* 646 F.2d 413, 414 (9th Cir. 1981) (employer who has knowledge that employee is working overtime cannot stand idly by and allow employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation).

Neither Mr. Escobar nor Mr. Rodarte are able to state a viable claim related to missed or unpaid meal breaks because there is no fact suggesting that Defendant was aware that either of these individuals had worked overtime but failed to pay for the work performed. There is also no suggestion that MTC was operating under a deliberate obtuseness. Defendant necessarily assumed meal breaks were taken during transport duty assignment and would not know otherwise unless notified by the detention or transport officer. *See, e.g., Mencia v. Allred*, 808 F.3d 463 (10th Cir. 2015) (plaintiff was not equitably estopped from asserting that he was entitled to additional wages and compensation under FLSA because employer should have known that employee was working too many hours on non-exempt work to qualify for exemption, especially because employer should have known that employee was working too many hours on non-exempt work to qualify for exemption).

Plaintiffs contend that "it is well settled that an hourly employee can assert a claim under the FLSA when he is required to work through all or some of an automatically-deducted meal period," and take issue with this Court considering the substantive merits of a claim in a motion for leave to amend. Doc. 162 at 5-6. Plaintiffs' counsel appears to overlook the requirement that any of these claims—including an amendment to the complaint—must still pass muster as a viable claim and withstand dismissal. *See TV Commc'ns Network, Inc. v. Turner Network Television, Inc.,* 964 F.2d 1022, 1028 (10th Cir. 1992) (affirming district court's dismissal of complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6)); *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment).

The problem here is that there are no facts to support a meal break claim under the FLSA because there are no facts suggesting that Defendant MTC knew or should have known of missed meal breaks and failed to pay overtime. *See, e.g., White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012) (affirming summary judgment for employer, noting that the employer had a process for claiming compensation that always worked in the plaintiff's favor when she used it, so her failure to use the process for the wages at issue in this case was fatal to her claim); *Hertz v. Woodbury County*, 566 F.3d 775, 782 (8th Cir. 2009) (affirming verdict for employer where employer had process for claiming overtime that plaintiffs regularly used for other overtime claims; employer had no knowledge or constructive knowledge that additional overtime was owed).[3] Where MTC was apprised of an overtime pay shortage for a missed meal

---

[3] Plaintiffs' counsel also conflates the difficulty Mr. Escobar frequently faced in having the time to take meal breaks with a bona fide meal break claim that may violate the FLSA. Doc. 162 at 6. The purported violation is premised on an employer's failure to provide compensation for missed meal breaks that are automatically deducted, not keeping a detention officer too busy to take meal breaks. *See, e.g., French v. Midwest Health, Inc.,* 2015 WL

break through the completion of a time adjustment form, the shortage was corrected and the employee was paid fully and accurately:

> Q. . . . Every time you identified a problem on a timecard report, it's been solved, eventually, by payroll?
>
> A. If I bring it up to their attention, yes, sir, they would.

Deft's Ex. D (Escobar Dep.) at 70:1-10.

and

> Q. Was there ever a time when you filled out a time adjustment form and you didn't get paid for the time that was at issue on the form?
>
> A. No.

Deft's Ex. D at 64:20-23.

## CONCLUSION

In sum, this Court finds and concludes that Plaintiffs' motion to amend could have been filed at least months earlier, and the Court finds it a poor excuse to lay the blame for the delay on defense counsel's refusal to consider these claims already asserted in the current complaint.

The Court makes no finding here on whether granting the motion would be prejudicial to Defendant because it is not clear without further inquiry whether further discovery would be necessary if Plaintiffs were allowed to amend the complaint. The Court does make a finding here, however, that Defendant would be prejudiced by re-opening discovery at this point in the case.

Finally, the Court finds that amendment would be futile. The proposed amendment states that "Plaintiffs lost compensation due to auto-deducted and unpaid meal break times that were in fact worked by the Detention Officers serving on Transport Duty." Doc. 150-1, ¶26. This claim

---

4066748, at *1 (D.Kan.,2015) (condition certification granted in class where employees worked during 30-minute meal breaks with no compensation).

would be subject to dismissal because based on statements made by Plaintiffs Escobar and Rodarte, MTC corrected any overtime shortages which it became aware after time adjustment forms were submitted.

**THEREFORE,**

**IT IS ORDERED** that Plaintiffs' Opposed Motion Seeking Leave to File Second Amended Complaint **(Doc. 150)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE