# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

MARISELA AGUILAR, et al.,

      Plaintiffs,

   v.                                 Civil No. 16-00050 WJ/GJF

MANAGEMENT & TRAINING
CORPORATION d/b/a MTC,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' MOTION TO DESIGNATE DETENTION OFFICERS
## ASSIGNED TO TRANSPORT DUTY AS A SUBGROUP

THIS MATTER comes before the Court upon Plaintiffs' Opposed Motion to Designate Detention Officers Assigned to Transport Duty as a Subgroup, filed July 7, 2017 **(Doc. 152).** Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiffs' motion is not well-taken and, therefore, is denied.

## BACKGROUND

This is a collective/class action lawsuit filed by a group of over 20 current or former employees of Defendant ("MTC") who claim they were not paid for some of their hours worked on assignment for MTC at the Otero County Prison Facility near Chaparral, New Mexico. The lawsuit asserts claims for unpaid wages and overtime, as well as other statutory damages and the recovery of attorneys' fees, under the Fair Labor Standards Act 29 U.S.C. §§ 201-219 ("FLSA") and/or the New Mexico Minimum Wage Act, N.M.S.A. §§ 50-4-1 to 50-4-33 ("NMMWA").

Plaintiffs contend that they were subject to two policies potentially prohibited by the FLSA:  (1) they were required to spend time on duty inside the prison, without pay, before and/or after their shift, gathering and securing equipment and passing through prison security areas; and (2) MTC's use of the "rounding" method of timekeeping which allegedly causes underpayment in calculating wages.  Plaintiffs have recently raised another challenge to the MTC pay policy, claiming that policy automatically deducts pay for meal break time when an officer is assigned to Transport Duty, even when the officer does not receive any meal break time.   However, the Court denied Plaintiffs' motion to amend the complaint to add this as a separate claim for underpayment of overtime.  *See* Doc. 167.

According to Plaintiffs, of the 170 total Detention Officers employed at the prison, ten percent rotate on and off Transport Duty.  *See* Doc. 152 at 3 (citing to Factual App'x., Doc. 154, at ¶12).   In this motion, Plaintiffs seek to designate Detention Officers who are named Plaintiffs or who have opted-in and were assigned to the Transport Duty post as a subgroup asserting a sub-claim in this lawsuit.  Defendant opposes the separate designation because it would involve more discovery and is not more efficient.

## DISCUSSION

A district court has wide discretion to manage collective actions. *See Hoffmann-La Roche v. Sperling,* 493 U.S. 165, 171 (1989), *cited in Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010).

Plaintiffs claim there is a high degree of commonality between Detention Officers assigned to Shift Assignments and Transport Duty.  For example, all Detention Officers, whether working Shift Assignments or Transport, are assigned to the same job title (as "Detention Officer"); perform substantially similar job duties; work at the same prison facility and under a

common set of pay policies and procedures are paid pursuant to the same hourly and overtime pay rates and benefit policies; and pass through the same or substantially similar pre-shift and post-shift activities at issue in this case (including pre-shift and pass-down briefings). In addition, all of the Detention Officers who are plaintiffs in this case have worked the same relevant time period, from January 2013 to the present and are asserting claims based on the same laws which are supported by the same documentary evidence and witnesses.

Plaintiffs point to a few "factual differences" which form the basis for Plaintiffs' request to designate a subgroup for claims of Detention Officers while they are on Transport Duty:

(1) Detention Officers who are on Shift Assignments are assigned to work on one of three regularly-assigned eight-hour shifts, while Detention Officers who are on Transport Duty do not work regular shift times but rather work hours that vary depending on the number of prisoners they are escorting and the locations they travel to and from during the day.

(2) Detention Officers on Shift Assignments are subject to the "rounding" policy at issue in this case, while Detention Officers working Transport Duty are paid according to clock-in and clock-out time.

(3) while there are no unpaid meal breaks or auto-deductions of paid time for meal breaks during a Shift Assignment, Detention Officers working Transport Duty are designated by MTC policy to receive a one-hour unpaid meal break each day in which a one-hour time period is automatically deducted from the Transport Officer's paid time each day worked.

Plaintiffs' motion is denied, for several reasons. First, the Court recently denied Plaintiffs' motion to amend the complaint to specifically include missed meal break claims. *See* Doc. 167. The Court concluded that the motion was both untimely, and that amendment would be futile, thus precluding any claim for missed meal breaks. There is no sense in allowing a subgroup for plaintiffs asserting a claim that does not exist.

Second, even if such a claim had been initially asserted, the Court fails to see how designating a subgroup would allow the Court to manage the case more efficiently. Plaintiffs' counsel cites to cases involving circumstances that are more obviously conducive to the creation

of sub-groups—for example, where separate work facilities are involved (*Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 302 (D.Md. 2007)); where one group of employees are employed directly by a defendant and another group is employed by subcontractors to perform work at the same work sites (*Rios v. Midwest Partitions, Inc.*, 2016 WL 7212480, at *3 (D.Colo., 2016)); or where each plaintiff raised a different combination of ten different subclaims (*Alvarez v. Chicago,* 605 F.3d 445 (7th Cir. 2010). In contrast, this is not a very complex class action, and the differences are too minor to warrant a separate subgroup. The factual differences, listed above, can be addressed in the damages phase for unpaid overtime, if liability is established.

Third, creation of a new subgroup would involve further discovery. This case has been conditionally certified. Doc. 104. Although discovery ended on July 31, 2017, further discovery would be required to ascertain whether the members of this new subgroup are "similarly situated," utilizing a stricter standard at this point in the litigation. *See Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095, 1102-03, 1105 (10th Cir. 2001) (stricter standard applies when discovery is complete and is often but not always presented in the context of a motion to decertify). In the context of this subgroup, further discovery would have to be taken regarding MTC's defenses for each individual in the subgroup. For example, individualized inquiries would have to be made: about the extent to which each person in the subgroup utilized Defendant's time adjustment process to notify MTC of any overtime shortages for missed meal breaks and had them corrected; which claims amount to just a few dollars and are therefore *de minimis*; and which individuals were allegedly forced to work through lunch. The end result could very well be that these individuals are *not* "similarly situated" under the FLSA, thus defeating any basis for a subgroup and wasting everyone's time—including the Court's time.

Moreover, as Defendant explained in its response to Plaintiffs' motion to amend, discovery would have to be reopened in fairness to MTC so that MTC can defend against the lunch claim. The Court has already denied Plaintiffs' motion to amend on other grounds, but the need for further discovery after the deadline has passed also militates against adding a subgroup at this point. *See Thiessen,* 267 F.3d at 103 (court should take into account "fairness and procedural considerations" in deciding whether to add subgroup).

Finally, the size of the would-be subgroup diminishes even further any point in designating one. Plaintiffs estimate that 11 plaintiffs (in total) were on transport duty, implying that 11 plaintiffs were not paid when they worked through lunch. Doc. 152 at 3. However, two of these plaintiffs (Mr. Escobar and Mr. Rodarte) must be subtracted from this number because as the Court has already found, they do not have actionable claims for missed lunch breaks. *See* Doc. 167 at 12-13. This means that the total number of plaintiffs in the potential subgroup is perhaps 9 and proceeding in this case with a subgroup of 9 is no more efficient than proceeding without this subgroup. Defendant correctly notes that with individualized fact-specific defenses unique to each person on transport duty who may have worked through a lunch, the collective method for trying the claims of 9 plaintiffs offers no advantage over a traditional trial. As the Court mentioned above, any factual differences between the claims of those who worked transport duty and missed a meal break and those who remained on shift assignment as detention officers, can be resolved by individual handling of damages after liability is established.

Therefore, Plaintiffs' Opposed Motion to Designate Detention Officers Assigned to Transport Duty as a Subgroup (**Doc. 152)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE