# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

MARISELA AGUILAR, et al.,

       Plaintiffs,

     v.                                Civil No. 16-00050 WJ/GJF

MANAGEMENT & TRAINING
CORPORATION d/b/a MTC,

       Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY
## and
## ORDER DENYING PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO
## SUPPLEMENT A NEW TIMEKEEPING POLICY ISSUED BY DEFENDANT

THIS MATTER comes before the Court upon Defendant's Opposed Motion for Summary Judgment on Liability, filed July 21, 2017 (**Doc. 160**).  Having reviewed the parties' pleadings and the applicable and controlling law, the Court finds that Defendant's summary judgment motion is well-taken and, therefore, is granted with respect to Plaintiffs' claims asserted under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and the New Mexico Minimum Wage Act, N.M.S.A. §§ 50-4-1 to 50-4-33 ("NMMWA").

## BACKGROUND

This is a collective/class action lawsuit filed by current or former employees of Defendant Management and Training Corporation ("Defendant" or "MTC") who claim they were not paid for some of their hours worked on assignment for MTC at the Otero County Prison Facility near Chaparral, New Mexico. The lawsuit asserts claims for unpaid wages and overtime, as well as other statutory damages and the recovery of attorneys' fees, under the Fair Labor

Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and/or the New Mexico Minimum Wage Act, N.M.S.A. §§ 50-4-1 to 50-4-33 ("NMMWA").  Plaintiffs  contend they should be compensated for various pre- and post-shift activities which they argue are compensable, namely (a) waiting at the prison, (b) clearing security, (c) taking and returning equipment, and (d) meeting and reporting to other detention officers. (First Am. Compl. ¶¶ 20 - 22.) In addition, Plaintiffs accuse MTC of unlawful "rounding" practices with respect to their compensation.

## I.   Parties' Positions

The issues must be considered in the context of the challenged activities performed by the detention officers to and from work.  Plaintiffs claim that they should be paid for the following activities to and from their posts:

### 1.   Parking Lot to Outside Double Gate to Prison

Officers walk through an outside double gate to enter the prison on their way from the parking lot.  Once inside, they walk to metal detector.

### 2.   Metal Detector

Clearance through metal detector where the officers empty their pockets and take off their jackets for a security clearance.

### 3.   Pre-Shift Assignment, Briefing and Paperwork

After passing through the metal detector, the officers receive their post assignments.  Defendants acknowledge that in addition to post assignments, officers may receive additional information about what is happening at the assigned post, and that this takes an additional one or two minutes.  Plaintiffs describe this additional information as a "pre-shift briefing" which includes a verbal post assignment, a briefing on operational and security issues and the distribution of paperwork for most posts.  Plaintiffs point out that prior to December 2016, these activities occurred *before* clocking in at Time Clock.  After December 2016, the "pre-shift briefing" occurred *after* clocking in.  (*See* Deft's Fact 8).

### 4.   Key Retrieval

A few steps after the time clock is the area where officers go to a fingerprint-activated key box to retrieve keys they'll need for their shifts.  They then then walk through another set of security doors to central control and the inmate areas.

        5.      <u>ID Verification & Equipment Collection</u>

On passing into the central control facility, Officers pass their ID's to officers inside the central control who review them, then pass them back through a different side of the wall.  Officers then collect equipment such as pepper spray, handcuffs and radios from central control, although parties dispute whether all of the officers are required to pick up equipment.  (D's Fact 18 & response)

        6.      <u>Arrival at Post and "Pass-Down"</u>

Once an officer arrives at his post, there is a "pass-down" or overlap period between the shifts where the officer going off shift can convey information about the post to the officer coming on.  This exchange occurs on the post.

## II.    Legal Standards

    A.    <u>Continuous Workday</u>

The FLSA does not specifically define "work," so courts must determine on a case-by-case basis whether an employee's activities are compensable under the FLSA. *See Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274, 1285 (10th Cir.2006) (citations omitted); 29 C.F.R. § 785.6. The Department of Labor has adopted the "continuous workday" rule, which means that the "workday" is generally defined as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." § 790.6(b).  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28 (2005) (*"Alvarez"*).  The term "principal activity or activities" embraces all activities which are "an integral and indispensable part of the principal activities." *Alvarez*, 546 U.S. at 21(*"Alvarez"*).  An activity is integral and indispensable if it is an "intrinsic element" of the employee's principal activities, and one with which the employee cannot dispense if he or she is to perform his or her principal activities. *See Integrity Staffing Solutions, Inc. v. Busk*, —— U.S. ——, 135 S.Ct. 513, 514 (2014), cited in *Landry v. Swire Oilfield Servs.,*

*L.L.C.*, No. CIV 16-621 JB/LF, 2017 WL 1709695, at *24 (D.N.M. May 2, 2017)); *Baker v. Barnard Const. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998) (holding that if an activity is "an integral and indispensable part of the principal activities for which covered workmen are employed," it constitutes a compensable principal activity rather than a non-compensable preliminary or postliminary task).

>  B.   Portal-to-Portal Act

The FLSA was amended by the Portal-to-Portal Act to exclude normal home to work travel from the scope of paid time under the FLSA, as well for any activities that are merely "preliminary to or postliminary" to their principal activities at work. 29 U.S.C. § 254(a); 29 C.F.R. § 785.35.   The Portal-to-Portal Act's amendment, however, did not change earlier descriptions of the term "work."   In *Alvarez,* the Supreme Court clarified that time spent after the beginning of the first principal activity, including time spent walking, is not affected by §4(a) of the Portal-to-Portal Act, 29 U.S.C. §254(a), and is therefore compensable.   546 U.S. at 28 (2005). In *Steiner v. Mitchell*, 350 U.S. 247, 254 (1956), the Supreme Court found that Congress passed the Portal-to-Portal Act still intending for an employee's activities to fall within the protection of the FLSA "if they are an integral part of and are essential to the principal activities of the employees."

Thus, activities performed either before or after the regular work shift are still compensable "if those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." *Id*. at 256. (emphasis added). The Supreme Court further clarified this rule in *Alvarez*, explaining that any activity that is "integral and indispensable" to a "principal activity" is itself a "principal activity" and is thus compensable under the FLSA.  *Alvarez,* 126 S. Ct. at 525.  Further, where an employee's activity "takes all of

a few seconds and requires little or no concentration," then the activity is "properly considered not work at all." *See, e.g., Landry v. Swire Oilfield Servs., L.L.C.*, No. CIV 16-621 JB/LF, 2017 WL 1709695, at *23 (D.N.M. May 2, 2017) (citing *Smith V Aztec Well Servicing Co.,* 462 F.3d 1274 (10th Cir. 2006)).[1]

Under the FLSA, then, a "workday" begins after the beginning of the first principal activity, and activities after that point are compensable and not affected by §4(a) of the Portal-to-Portal Act.  In other words, any pre or post shift "principal activity" triggers coverage under the FLSA for other activities that occur after that point.  This is why the determination of which (if any) of the activities at issue are considered "principal activities" under the FLSA is so critical.  Any activity, even time spent walking, is excluded from the scope of the Portal-to-Portal Act and *is* compensable as long as the activity occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity.  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).  Thus, if any of the below activities are found to be compensable, that activity would trigger the "continuous workday."  *See, e.g., Landry v. Swire Oilfield Servs., L.L.C.*, No. CIV 16-621 JB/LF, 2017 WL 1709695, at *23 (D.N.M. May 2, 2017) (if plaintiffs' first principal activity—loading their trucks with protective gear—occurred before traveling to the job site, then the plaintiffs' travel time constituted compensable work) (citing *Smith v. Aztec Well Servicing Co.,* 462 F.3d 1274 (10th Cir. 2006)).

C.      "Rounding" Policy

Plaintiffs also claim that they have lost time for which they should be compensated due to Defendant's "rounding" policy, which Plaintiffs claim is unlawful.  "Rounding" is addressed in

---

[1]  *See also Sandifer v. U.S. Steel Corp*., 134 S. Ct. 870 (2014) (noting that there may be some activities such as "changing clothes" and "washing up or showering" would be considered "preliminary" or "postliminary" activities when performed outside the workday, but in certain situations could be "so directly related to the specific work the employer is employed to perform that [they] would be regarded as an integral part of the employee's "principal activity."

29 CFR §785.48 as a lawful method for averaging start and stop work times where time clocks are used.  The practice of "computing working time" by "rounding" is accepted and lawful "provided that the practice "averages out so that the employees are fully compensated for all the time they actually work" and so that "it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked."  §785.48(b).

       D.    <u>Summary Judgment</u>

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case.  Once that burden is met, the nonmoving party must put forth specific facts showing that there is a genuine issue of material fact for trial; he may not rest on mere allegations or denials in his own pleadings. A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id*. (citing *Anderson*, 477 U.S. at 248). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.* The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Cross v. The Home Depot*, 390 F.3d 1283, 1284-85 (10th Cir. 2004). Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp*., 477 U.S. at 327 (quoting Fed. R. Civ. P. 56).

Whether an activity is preliminary or postliminary to principal activities for purposes of §254(a)(2) of the Portal-to-Portal Act is a mixed question of law and fact because the precise nature of the employee's duties is a question of fact, while application of the FLSA to those duties is a question of law. *Baker v. Barnard Const. Co.*, 146 F.3d 1214, 1216 (10th Cir. 1998). However, where there are undisputed facts as to whether a certain activity is a compensable principal activity or a non-compensable preliminary or postliminary task, the Court may appropriately grant summary judgment. *Renfro v. City of Emporia*, 948 F.2d 1529, 1536 (10th Cir. 1991) (granting summary judgment by relying on undisputed facts); *cmp., e.g., Brubach v. City of Albuquerque*, 893 F.Supp.2d 1216 (D.N.M.,2012) (issues existed as to whether city "employed" security guards for five-minute period prior to start of their shifts, summary judgment denied as to whether that time was compensable "work" within meaning of FLSA); *see also Carter v. Panama Canal Co*., 314 F.Supp. 386, 391 (D.C.D.C. 1970) (whether the activities were such an integral and indispensable part of the employee's principal activity as to be compensable is a question of fact); *Dunning v. Q. O. Ordinance Corp*., 233 F.2d 902, 903 (8th Cir. 1956) (question whether activities of powder line workers in changing clothes before and after work and in showering were such integral and indispensable part of principal activities so that they were compensable, was question of fact).

## DISCUSSION

Defendant contends that Plaintiffs are attempting to circumvent the Portal-to-Portal Act in trying to claim payment for activities on their way to and from their posts because compensable work begins and ends at an employee's post and that activities carried out on their way to and from an officer's post are not compensable. Defendant offers three grounds for summary judgment:

(1) Plaintiffs' walk time to/from post and the time spent on preliminary and postliminary activities is not compensable because an officer's workday begins *after* pass-down is given by the previous shift, and ends when pass-down *begins,* on the arrival of the next shift;

(2) Any discrepancy between what Plaintiffs are paid and their scheduled start/end times (the shift times for which MTC pays them) is *de minimis*; and

(3) Plaintiffs' claims are barred due to their failure to use MTC's time adjustment process, which is a system for correcting compensation errors.

## I. MTC's Alleged Unlawful "Rounding Practice"

As a preliminary matter, the Court finds that Plaintiffs' theory of unlawful "rounding" can be dispensed with in order to clarify the real issues in this case. Plaintiffs contend that Defendant's unfair rounding practices violate the FLSA and the NMMWA and further claim that "rounding" violations are not subject to a *de minimis* defense as a matter of law because MTC uses an up-to-the minute payroll system which precisely records work start-and stop-times.

MTC contends that this case is not about "rounding" as that term of art is used in the regulations and case law. MTC describes its practice as a "ten-minute adjustment window," (*see* Doc. 160 at 2) which is used because the officers' eight-hour shifts begin and end at their posts. Also, because the activities that occur within 10 minutes of the start/end times of scheduled shifts are not compensable, any so-called "rounding" or averaging affects largely noncompensable activities. Doc. 160 at 13, n.3.

MTC explains that it is impractical to have time clocks at each of the 40 prison posts, and so the detention officers use a time clock that is a few steps beyond the metal detector. The time clock records the actual time that officers swipe in and out, but because the time clock is about ten minutes away from the various posts, MTC pays its officers based on their shift schedule—as long as officers clock in or out no more than ten minutes on either side of the scheduled start or stop time. So, for example, an officer scheduled for the 6:00 a.m. to 2:00 p.m. shift who clocks

in at 5:58 a.m. and out at 2:05 p.m. will be paid for 8 hours, as will an officer who clocks in at 6:10 a.m. and out at 1:59 p.m.  By contrast, an officer on the same schedule who clocks in at 6:12 a.m. and out at 2:11 p.m. will be paid for actual clock time; and an officer who clocks in at 6:02 a.m. but out at 2:11 p.m. will be paid as if the officer worked from 6:00 a.m. to 2:11 p.m. *See* Doc. 160 at 13.

Another way of looking at the adjustment window is that MTC pays detention officers for the full eight-hour shift unless the officer arrives more than ten minutes *before* the shift begins or leaves more than ten minutes *after* the shift ends.   Under this practice, an officer is paid for the *total  eight-hour shift*—whether the officer arrives at post a few minutes early (which means an officer is not paid for those few minutes) or whether he leaves a few minutes early (in which case the officer is paid for time he not working).

The practice of "rounding" cannot be reconciled with MTC's ten-minute adjustment window; it simply does not apply.   "Rounding" is used when calculating increments of *work time*, so that actual work time is averaged down or up, depending on the incremental basis used. In other words, under a true rounding system, employees are working immediately upon clocking in.   Here, clocking in does not define "work" time; if it did, this lawsuit would have been easily resolved.   Instead, MTC applies its ten-minute adjustment window only to clock ins/outs within 10 minutes of scheduled "work" shifts.   This adjustment therefore does not reduce the total number of hours an officer has been scheduled to work on his eight-hour shift *unless* he is more than ten minutes late to arrive or more than ten minutes early to leave.

Moreover, under the regulations addressing the recording of working time, early or late clock punching "may be disregarded" where time clocks are used.  29 C.F.R. §785.48(a).  The law recognizes that "[m]inor differences between the clock records and actual hours worked

cannot ordinarily be avoided but major discrepancies should be discouraged since they raise a doubt as to the accuracy of the records of the hours actually worked." *Id.* MTC's time adjustment policy does not lend itself to major discrepancies because it does not affect compensation start/stop times for scheduled eight-hour shifts, which would be allowed under §785.48(b).  If an officer starts actual work early or leaves late (by less than ten minutes), MTC's time adjustment practice may benefit Defendant but it does not reduce compensation for the scheduled eight-hour shift.

The issue in this case is whether an officer should receive *additional* compensation for certain activities performed to and from the post, not whether any officer should be paid for a full eight-hour shift, and so Plaintiffs' theory of "rounding" practice violations is incongruous with the non-compensation allegations being made in this case. Therefore, the Court grants Defendant summary judgment on its position that MTC's time adjustment policy does not constitute "rounding" as that concept is used in wage and hour law.  Furthermore, the Court will not consider any of Plaintiffs' "rounding" argument in subsequent discussions on the issues raised in this motion.

## II.      Whether Activities Are Not Compensable and Therefore Excluded Under the Portal-to-Portal A[2]

Defendant contends that Plaintiffs' walk time to/from post and the time spent on preliminary and postliminary activities is not compensable because compensable activities begin and end at Plaintiffs' posts after pass-down.  The question in this section is whether any of the challenged activities during that time is compensable as principle activities.  Under the FLSA and the relevant case law, pre-and post- work is compensable as a principal activity only if (1)

---

[2]  The Court discusses the facts presented by both parties in the context of the different activities where they make the most sense.  Since there are tens of thousands of exhibits in this case, Doc. 164 at 2, the Court will identify only those facts which the Court finds to be relevant to the narrative.

Plaintiffs were "employed to perform" the work; and (2) the work is integral and indispensable to the principal activity. *Busk,* 135 S. Ct. at 519.

The Court has reviewed the considerable amount of materials submitted in connection with this motion, including Plaintiffs' numerous additional facts set forth in their response brief. As a result of the vast amount of material and information presented to the Court in Defendant's facts and Plaintiffs' responses to those facts, none of the evidence cited by Plaintiffs in their "additional facts" section provides the Court with anything new, much less evidence that creates a factual dispute.   For example, some of these additional facts are not inconsistent with Defendant's facts on the same issues. *See* Pltffs' Add'l Facts L, M,O, Z.   Other facts can best be described as legal argument as to whether an activity is compensable. *See* Pltffs' Add'l Facts H-J.   Still other facts focus on Plaintiffs' arguments on what they call MTC's illegal "rounding policy," which the Court rejects as an issue in this case. *See* Pltffs' Add'l Facts E, XX-ZZ.  The Court's discussion below therefore focuses on the information and evidence presented through Defendant's facts and Plaintiffs' responses.

A.    Metal Detector Clearance

Defendant contends that walking through the metal detector, which takes from three to ten or eleven minutes, is not compensable. Deft's Facts 6-8.  Plaintiffs claim there is a genuine factual dispute as to the amount of time to clear the metal detector, offering numerous declarations by Plaintiffs to counter the deposition testimony presented by Defendant, but any time differences turn out to be not only immaterial but ultimately in MTC's favor.   The declarations presented by Plaintiffs remain within the three to eleven minute window stated by Defendant.

Immaterial time differences aside, the bigger question is whether clearing the metal detector can be considered compensable activity because it is integral and indispensable to the officers' principal work activity. Defendant points to the United States Supreme Court's decision in *Busk*, 135 S.Ct. at 514, which held that time spent undergoing and waiting to undergo security screening is not compensable under the FLSA. *See Alvarez,* 546 U.S. at 40 (neither waiting nor walking was a principal activity). Defendant contends that Plaintiffs can perform their duties without having to go through the security screenings. In *Busk,* the security screenings were not "integral and indispensable" to employees in retrieving products from warehouse shelves or packaging them for shipment. *Busk,* 135 S.Ct. at 519. The "integral and indispensable" test is tied to the productive work that the employee is *employed to perform." Id.* (emphasis in original). Here, the screenings are not tied to the work of detention officers in the security of prisons, and there are no inmates living where the security screenings take place.

Plaintiffs contend that searching for contraband is part of their essential work function, and so mandatory clearance through the metal detector is integral and indispensable to their principal work activity and thus compensable. However, in clearing the metal detector, the officers are not searching for contraband; rather they themselves are being searched for contraband—and being searched is not a compensable activity. Plaintiffs attempt to distinguish *Busk* by noting that the searches in that case took place *after* the workday was over as a theft prevention measure. Plaintiffs conveniently ignore the Supreme Court's reasoning in *Busk,* which expressly found no distinction between pre-shift searches conducted for safety of employees and those conducted for the purpose of preventing theft post-shift, and that "neither were compensable under the Portal-to-Portal Act." 135 S.Ct. at 519. Also, the fact that the security clearances may be for the employer's benefit is not dispositive. The Supreme Court

noted that a "test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id.*

   Because the controlling law establishes that a preliminary security measure such as walking through a metal detector is not integral and indispensable to the officers' principal activity, Defendant is entitled to summary judgment on this issue in that walking through the metal detector is not compensable work.

      B.    <u>Pre-Shift Assignment, Briefing and Paperwork</u>

   Near the metal detector, supervisors give the officers paperwork for use on post, and the officers carry the paperwork in their hands or in a pocket on their walk to their posts. As supervisors distribute paperwork, they tell officers what their post will be for the day, and for some but not all Plaintiffs, the supervisors convey basic information about what is occurring on post, which is described as "pre-shift briefing." [3] Prior to December 2016 (which is the majority of time applicable to this case), officers would receive their post assignment and additional information (where applicable) *before* clocking in.   In December 2016, MTC changed the practice to where these activities took place *after* clocking in.  *See* Doc. 190 at 38-39.

   Defendant contends that "pausing briefly and hearing a few words about what is happening on post, during the walk to that post" is not integral and indispensable to Plaintiffs' performance of their jobs.  Defendant also points out that officers did not always get briefing with their post assignments.  Deft's Facts 8, 9.  Plaintiffs claim that the post assignment, pre-shift briefing and distribution of paperwork constitutes "work" because the activities "relate[s] to

---

[3]   The term "pre-shift briefing" is used in other cases to refer to the briefing that occurs between shifts and which in this case is called "pass-down" or "shift overlap."   *Bustillos et al v. Bd. Of Cty Commissioners of Hidalgo Cty.*, No. 15-2213, Order & Judgment (Sept. 14, 2017) (reversing summary judgment granted to county on plaintiff's claim that county required her to be at work five minutes before her shift  began in order to be briefed by the outgoing dispatcher, but failed to pay her for that time); *see also Brubach et al. v. City of Albuquerque*, 893 F.Supp.2d 1216 (fact issue existed as to whether city "employed" security guards for five-minute period prior to start of their shifts for pre-shift briefing).  In this case, "pre-shift briefing" is distinct from the "pass-down" briefing that takes place on the posts just prior to one shift ending and another starting and will be explored further later in this opinion.

essential functions" listed on officers' job description—which is to provide security.  Doc. 190 at 16 (Pltffs' Fact H).  Plaintiffs also contend that a supervisor was always present to give out additional briefing at the metal detector.  *See* Deft's Facts 8-9 and Pltffs' resp. thereto.  *See, e.g.,* Pltffs' Ex. GG (Ramirez Dep.) at 27:13-25 (information as to any areas under lockdown or any hospital duties); Pltffs' JJ (Rodarte Dep.) at 27:3-14, 28:13-23 ("Once you clear the metal detector, my supervisor will be there"); Pltffs' Ex. EE (Jauregui Dep.) at 23:23 to 25:6) (supervisor, lieutenant or sergeant present at metal detector to brief him on the prior shift).  However, the testimony presented by Plaintiffs indicates that only *some* of the Plaintiffs *always* received additional briefing.  This testimony does not create any factual dispute even when viewing the facts favorably to Plaintiffs because, as Defendant notes, MTC does not dispute that *some* Plaintiffs testified that a supervisor was always present at the metal detector or that *some* officers were always provided additional information.

Plaintiffs claim that Defendant has conceded that what it describes as "pre-shift briefing" constitutes compensable work by the detention officers.  They base this claim on the testimony of Warden Martinez, who stated that MTC moved the pre-shift briefing further back in the building to occur after the officers clocked in and that these changes were made in response to this lawsuit.  Pltffs' Ex. FF at 38:12-20; at 36:20-22 (the change was made "[b]ecause we want to make sure they clock in and then do their work . . . .").  Plaintiffs view this testimony by Warden Martinez, who testified as a corporate representative for MTC, as admissions by MTC that the pre-shift briefing constitutes work and thus was compensable under the FLSA.  *See* Doc. 190 at 39.

The Court finds the Warden's testimony to be interesting but immaterial. As Defendant notes, an employer is free to act out of caution or any other reason and simply pay employees for

actions as to which the law itself would not necessarily require payment. *See, e.g., Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000) (affirming district court's denial of liquidated damages in part because it overcompensated employees by paying them double for overtime instead of only time and a half and paying them for an hour for an alarm response that only took five minutes).  Warden Martinez is not an FLSA expert, and his statements do not replace the factual and legal inquiry that must be made here, which is whether the post assignments and additional information that is provided at the metal detector (either before or after, depending on the time period) are integral and indispensable to the officers' principal activities.

The following facts are undisputed:  (a) some Plaintiffs encounter a supervisor at the metal detector and some do not; (b) some Plaintiffs receive only a post assignment at the metal detector; and (c) other Plaintiffs receive additional information about the assigned post.   Based on these facts and applying relevant law, the Court finds that these activities are preliminary/postliminary as a matter of law under the FLSA and the Portal-to-Portal Act.   First, learning one's post assignment is not compensable.  It is preliminary to the "productive work the officers are *employed to perform*" and simply directing the officers to the location where they are to perform this work.  *Busk,* 135 S.Ct. at 519 (emphasis in original); *see also Carter v. Panama Canal Co.,* 314 F.Supp. 386, 392 (D.C.D.C. 1970) (the time required to look for and place a check mark by a name on the assignment board and a two to fifteen minute walk to a duty station is negligible and not compensable); *Butler v. DirectSAT USA, LLC*, 55 F.Supp.3d 793 (D.Md.,2014) (finding that the time technician spent reading e-mails from companies that provided satellite installation services listing his work assignments for the next day, mapping out

directions, and prioritizing his routes was not compensable under the FLSA; and that such tasks were related to technician's commute, not work).

Second, learning the location of the place of performance does not become a compensable activity merely because the supervisor adds some preliminary information at the same time about what is happening at the post.  It is undisputed that receiving this additional information takes all of one or two minutes (*see* Deft's Fact 9 and Pltffs' Resp. thereto), and that it does not always occur.

A much more detailed briefing, described in this lawsuit as a "pass-down," happens later on post, as the leaving shift imparts necessary information to the oncoming shift.  *See* Deft's Fact 11.  Plaintiffs claim that the pre-shift briefing encounter is "required" or "mandatory" and that they cannot effectively of safely do their "mandatory job of guarding inmates" without this briefing.  *See* Doc. 190 at 38.  There is no evidence that MTC requires this encounter or has made it mandatory, based on Plaintiffs' own proffered evidence.  For example, Plaintiffs offer the testimony of Carlos Rosales to show that the officers receive a post assignment, paperwork, and individualized briefing about what happened on the prior shift and about particular inmates on every shift.  *See* Pltffs' Ex. KK (Rosales Dep.) at 18:5-12 (there is a sergeant telling him what his post is after clearing the metal detector).  However, Mr. Rosales also states in this same deposition that there are "sometimes" supervisors telling him what his post is (Ex. KK at 19:1-5) and that he could not remember the last time there was a supervisor at the metal detector (Ex. KK at 36-37).  Such evidence is hardly the kind that would persuade a fact finder that this pre-shift briefing is an "integral and indispensable" activity.   Further, an activity that is mandatory is not necessarily sufficient to transform an activity into one that is "integral and indispensable."  *See Busk,* 135 S. Ct. at 519 ("If the test could be satisfied merely by the fact that an employer

required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address.").  Based on the undisputed facts, the Court finds as a matter of law that none of the activities at the metal detector—receiving a post assignment, pre-shift briefing or paperwork—is compensable work under the FLSA.

       C.     <u>Collection of Keys and Equipment</u>

A few steps after the time clock is a fingerprint-activated key box.  Some of officers retrieve keys from the box, which can take anywhere from a few seconds to a few minutes, with a high end of five minutes, depending on whether there is a wait. The officers clip the keys onto their belts or slip them into their pockets.  The keys Plaintiffs carry are on rings approximately two inches or less to four inches in diameter, with up to twenty standard house key-size keys on a ring. One key is about six to eight inches long. Some Plaintiffs carry more than one ring. The rings clip to Plaintiffs' belts directly or are in a key holder on their belts. Some Plaintiffs choose to carry the keys in their pockets. *See* Deft's Facts 18-20 & supporting exhibits.

A few steps after the key box, Plaintiffs pass through a set of security doors using an intercom and buzzer.  On the other side of the security doors, Plaintiffs encounter the prison's central control facility.  They pass their ID's to officers inside central control who review the ID's then pass them back through a different side of the wall.  At this point, some of the Plaintiffs collect equipment such as pepper spray, handcuffs, radios and scissors from central control.  This process takes two to five minutes.  Some Plaintiffs never stop to collect equipment at central control or anywhere else, either because they bring equipment with them from home or because it is available at their posts. Deft's Fact 18 & supp. exhs.  According to testimony presented by Defendant, the number of officers who pick up equipment at central control varies from less than 50%, *see* Deft's Ex. H, Escobar Dep.at 28:10-15, to less than 83%, *see* Deft's Ex.

G, Ramirez Dep. at 98:19-99:5 (83% return equipment and only 59% pick up keys).  From central control, officers walk to their post for the day.  These posts can be anywhere from a one to seven-minute walk away.  Defendant contends that the collection of keys or equipment does not transform the walk to post into compensable time.

These facts are undisputed.  Plaintiffs take issue with Defendant's statement that only *some* Plaintiffs pick up equipment on the walk to their posts, but offer no evidence to dispute that statement.  Just as Plaintiffs challenged Defendant's facts regarding pre-shift briefing at the metal detector but presented no evidence to back up that challenge, here again Plaintiffs balk at the statement that "some" officers pick up equipment, yet go on to state that "[t]he evidence is that *almost all* Officers select, pick up and inventory equipment each shift." Resp. to Deft's Fact 18.  This statement is not inconsistent with Defendants' facts on this issue, notwithstanding testimony presented by Plaintiffs who state that they do pick up equipment (Officers Ramirez, Hayes, Carranza and Vasquez, *see* Resp. to Deft's Fact 18).  Plaintiffs also offer testimony by the Warden that "[n]ot everybody" picks up equipment at central control—which again is not inconsistent with Defendant's Fact 18.  Pltffs' Ex. FF at 89:1-7.

In Fact 22, Defendants state that the walk from central control to the posts can take anywhere from one to seven minutes.  Plaintiffs claim there is a "genuine dispute" of material fact on this issue, but offer nothing to back up this claim.   In what Defendant accurately describes as a "diversion and data dump," (Doc. 199 at 6, Fact 22), Plaintiffs present a barrage of references to various Plaintiffs' declarations without any suggestion of a time window they *do* espouse.  The Court took enough time to review a few of these declarations to conclude that nothing in Plaintiffs' responsive evidence to Fact 22 directly disputes Defendant's statement of fact concerning this time window.  Most of these declarations, each several pages long, can best

18

be described as proffered measurements of total damages presented in chart and table form and based on what Plaintiffs consider to be MTC's unlawful rounding practices. *See, e.g.,* Pltffs' Ex. T, Jauregui Decl., ¶¶10-19; Ex. P, Navarette Decl., ¶¶24, 25; Ex. Q, Gallegos Decl., ¶¶24, 25, 29. Thus, Defendant's statements regarding the collection of keys and equipment is neither mischaracterized nor disputed, based on evidence submitted by Plaintiffs themselves.

The next question is whether, based on this undisputed evidence, summary judgment is appropriate for the activity of key and equipment collection. Plaintiffs contend that the collection of keys and equipment is integral and indispensable to what officers do: they use keys to guard the inmates and to lock and unlock doors to ensure security, and the equipment enables officers to safely and securely guard the inmates. They use radios to communicate with officers at their posts and to give them directions and instructions throughout the day. Hand restraints and pepper spray are used by officers as both a deterrent and if necessary, to control unruly inmates. Since the officers' sole purpose is to guard the inmates and secure the prison, Plaintiffs argue that the collection of keys and equipment start off the workday pursuant to the FLSA.

Plaintiffs also point to MTC's own Timekeeping Policy which states that "[e]mployees are prohibited from picking up keys, radios and/or weapons until they have clocked in, *and their scheduled shift has begun*." *See* Doc. 190 at 40 (citing Pltffs' Exs. B & C, emphasis added by Pltffs). However, the relevant law does not necessarily connect clocking in to the start of the "continuous workday"—indeed, if this were so, this lawsuit would probably not have been filed—and the Court declines to substitute a workplace policy for the legal standards underlying the FLSA and the Portal-to-Portal Act. Also, the plain language in the Timekeeping Policy makes it clear that officers' shifts begin and end at the top of the hour. MTC's ten-minute adjustment window is based on the start/stop times of these eight-hour shifts, and so reference to

"shift" obviously does not refer to the act of key and equipment collection.  Defendant states that it prefers that officers pick up/return keys and equipment after their eight-hour shift starts/ends, but this preference does not mean that key and equipment collection are therefore compensable.

Plaintiffs argue that officers often have to wait several minutes for their turn to retrieve keys from the key dispenser—anywhere from 10 seconds to "several minutes." Pltffs' Add'l Fact EE; *see* Deft's Fact 15 (collection of keys can take anywhere from a few seconds to three minutes).  However, waiting is not a compensable activity and "always qualif[ies] as a 'preliminary activity'"; nor does waiting turn an activity into a compensable one under the FLSA.  *Alvarez*, 546 U.S. at 40 (waiting may be necessary but is not "integral and indispensable" [like donning protective clothing is] because waiting may or may not be necessary in particular situations or for every employee").

Defendant relies on *Castaneda v. JBS, U.S.A.,* for the proposition that Plaintiffs' collection of keys and equipment on their way to their posts is not compensable and does not start the workday.  In *Castaneda,* the Tenth Circuit concluded that the employees at a beef-processing plant failed to show that an agreed upon pre-calculated time in their compensation scheme, based on a collective-bargaining agreement ("CBA") did not adequately compensate them for their time changing in and out of safety clothing and equipment and walking to their job posts.  819 F.3d 1237, 1249 (10th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016).  The Court notes that unlike this case, there was a CBA in *Castaneda* that dictated what activities were "integral and indispensable" to the plaintiffs' work even though the parties disputed what specific activities were encompassed by certain exclusions in the CBA.  Here, there has been no mention of a CBA to at least initially define activities that are considered "work" for purposes of compensation under the FLSA.  *See* 819 F.3d at 1250 (noting that under

29 U.S.C. §203(o), "the compensability of time spent changing clothes or washing is a subject appropriately committed to collective bargaining").  Thus, *Castaneda* is not dispositive of this issue for this reason. Here, whether an activity is compensable in the first instance must be decided by case law because there is no mention of a CBA that would have made those initial determinations.

Plaintiffs support their position with several cases outside of this jurisdiction.  Defendant attempts to distinguish these cases both legally and factually, and the Court agrees that the distinctions are sufficient to preclude any consideration of these cases.  In *Baylor v. United States*, the court held that security guards were entitled to compensation for the time they spent performing pre-shift activities consisting of drawing guns, receiving special instructions, and proceeding to posts of duty located varying distances from the central guard house.  198 Ct. Cl. 331, 1972 U.S. Ct. Cl. LEXIS 72 (Ct. Cl. 1972) (*Albright v. United States*, 161 Ct. Cl. 356, 1963 U.S. Ct. Cl. LEXIS 70 (Ct. Cl. 1963).  In *Taylor v. United States*, 1978 U.S. Ct. Cl. LEXIS 840, at 84 (Ct. Claims, October 31, 1978), which relied on *Baylor,* the court found that guards were engaged in compensable work activities when they performed the "essential duties" of reading bulletin board for assignments, picking up gas masks, binoculars and radios.  However, as Defendant points out, the ruling in those cases rested primarily on the court's determination that the activities were performed primarily because they were employer-required.  *See Baylor,* 161 Ct.Cl. at 357 (finding that activities were "officially ordered or approved"; *Taylor,* 1978 U.S. Ct.Cl. at 840 (guards were "essentially obligated to perform certain duties, such as cleaning their guns, prior to the shift each day").  After the Supreme Court's decision in *Busk*, whether the employer required an activity is not dispositive.  135 S.Ct. at 519 (a "test that turns on whether the activity is for the benefit of the employer is similarly overbroad"; "if the test could be

satisfied merely by the fact that an employer required an activity, it would sweep into "principal activities" the very activities that the Portal-to-Portal Act was designed to address").

Defendants also distinguish two other cases cited by Plaintiffs: *Brantley v. Ferrell Elec., Inc.,* 112 F.Supp.3d 1348, 1371 (S.D.Ga. 2015) and *Clay v. Huntington Ingalls, Inc.,* No. 09-7625, 2011 U.S. Dist.Lexis 155351, at *33-34 (E.D.La. Sept. 29, 2011). The Court agrees these are factually inapposite. *Brantley* involved equipment installers who wanted to be paid for loading their trucks and collecting work assignments each morning, and did not involve the collection of small items, such as the keys and equipment which form the facts in this case. The electrician plaintiffs in *Clay* had to transport "a cumbersome company-owned . . . hydraulic crimping machine." *Id.* at 31. The court noted that "the tasks of gathering and then lugging certain type of tools needed for a particular day's work assignment might very well trigger the start of the workday when it is done pre-shift." *Id.* at 34. In this case, there is no evidence of Plaintiffs having to "lug" any equipment or anything more burdensome than small, lightweight items, and any comparison of this case to *Clay* is unfounded. Further, the court in *Clay* remarked that "merely retrieving and toting a pair of pliers and a screwdriver is not going to trigger the start of the workday." 2011 U.S. Dist.Lexis 155351, at *31. The electrician plaintiffs in *Clay* could certainly argue that their tools are indispensable to their jobs—just as Plaintiffs argue here—yet the case cited by Plaintiffs found that merely picking up and carrying these tools do not trigger the compensable workday.

Plaintiffs also cite to a Fifth Circuit case, *Dunlop v. City Elec., Inc.*, in which the court found that certain chores performed by plaintiffs (also employee electricians), such as filling out requisition papers as well as the fueling, loading and cleaning out of employer's trucks, were compensable. Here again, the court's ruling rested on the finding these activities were performed

for the benefit of the employer.  527 F.2d 394 (5th Cir. 1976).  The case was also remanded for further determination of whether the time connected with these activities was de minimis and thus, not compensable.    Therefore, the cases cited by Plaintiffs are inapposite to their own situation, and do not provide a legal basis for finding that the collection of keys and equipment is a compensable activity, or for denying summary judgment on the issue.

The listed "essential functions" for a detention officer are listed in Plaintiff's Exhibit A, including but not limited to the following:

Search for contraband and provide security;

Count, feed and supervise detainees in housing, work and other areas;

Properly prepare and maintain records, forms and reports, as appropriate;

Transfer and transport detainees by walking or riding in vehicles. Restrain and secure assaultive detainees, as needed;

Respond to emergencies to search for detainees, administer first aid at the emergency site, carry an injured or unconscious detainee, and perform use of force procedures, including the use of chemical agents to control detainees[4]

Maintain accountability of staff, detainees and property; adhere to safety practice.

The keys and equipment collected by many of the officers are, to be sure, useful and helpful to the officers in doing their jobs, but that does not lead to the conclusion that the collection of keys and equipment as an "intrinsic element" of the officers' principal activities. *See Alvarez,* 546 U.S. 21, 40 ("The fact that certain pre-shift activities are *necessary* for employees to engage in their principal activities does not mean that those preshift activities are "integral and indispensable" to a "principal activity") (emphasis added).  It is also undisputed that the type of tools and equipment carried by the officers are small in size and not burdensome to carry.  This activity simply does not fit within the category of pre-shift activities that are

---

[4]   The first three job functions are highlighted by Plaintiff in Exhibit A.

excepted from the Portal-to-Portal Act. *Cmp. Mitchell v. King Packing Co.,* 350 U.S. 260, 262 (1956) (holding as compensable the time meatpacker employees spent sharpening their knives because dull knives would "slow down production" on the assembly line, "affect the appearance of the meat as well as the quality of the hides," "cause waste," and lead to "accidents") *with IBP, Inc. v. Alvarez,* 546 U.S. 21, 42 (2005) (holding as noncompensable the time poultry-plant employees spent waiting to don protective gear because such waiting was "two steps removed from the productive activity on the assembly line"), cited in *Busk,* 135 S. Ct. at 518).

Plaintiffs offer no evidence to suggest that the activity of collecting keys and equipment is "integral and indispensable" to Plaintiffs' work. Without such evidence, the Court finds that no reasonable fact finder would conclude that the collection of keys and equipment trigger the "continuous workday" rule. *Sandifer v. U.S. Steel Corp.,* 678 F.3d 590, 595–98 (7th Cir.2012) (holding that if time to perform an activity is noncompensable under § 203(*o*), then the activity is not a "principal activity" that begins or ends the workday), cited in *Castaneda v. JBS USA, LLC,* 819 F.3d 1237, 1249 (10th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016). Therefore, Defendant is entitled to summary judgment on the issue of whether the collection of keys and equipment is compensable under the FLSA.

D.  Pass-Down Briefings

After the officers arrive at their posts, there is a pass-down or overlap period between the shifts of two to five minutes so that the officer going off shift can convey information about the post to the officer coming on. This exchange occurs at the post, and it appears to be undisputed that all officers report for these briefings.

Defendant contends that the officers' workday begins *after* pass-down is given by the previous shift, and ends when pass-down *begins,* on arrival of the next shift. In other words,

Defendant claims that Plaintiffs should not be compensated for the time after they are at their posts for pass-down briefings. Defendant states that the shift overlap lasts five minutes or less (Deft's Fact 27). Plaintiffs do not dispute this time range, although they contend that the overall amount of time spent on this pass-down activity is "precisely recorded" on the timeclocks. *See* Resp. to Deft's Fact 27. However, the "facts" relied on by Plaintiffs do not offer any rebuttal evidence at all to Defendant's representations, and the Court is therefore free to ignore Plaintiffs' response on this issue.[5]

This is the one activity which the Court concludes is compensable under the FLSA, and this conclusion is bolstered by two cases from this district which have addressed this issue under similar conditions. In the first case, *Brubach v. City of  Albuquerque* which is relied on by Plaintiffs, United States District Judge Martha A. Vazquez held that five-minute daily pass-down briefings between security guards for the City of Albuquerque were compensable under the FLSA, but found that a fact issue existed as to whether the guards who arrived early for pre-shift briefing failed to incur overtime because they also left early.[6] 893 F.Supp.2d 1216, 1229 (D.N.M. Sept. 27, 2012) (Vazquez, J.). Defendant contends that *Brubach* follows an analysis that has now been rejected by *Busk,* because *Busk* clarified that an activity does not become "integral and indispensable" solely because it is required by the employer.   135 S. Ct. at 519 (a "required" activity is not necessarily compensable). However, the Court is not persuaded by this argument, because Judge Vazquez' conclusion was not based solely on the fact that the briefings were required by the City:

---

[5] Facts ZZ and AAA refer to "aggregate time lost by rounding versus and database charts for several Plaintiffs. This kind of non-responsive fact is fairly typical of all the "additional facts" presented by Plaintiffs' counsel, which the Court has found to be a considerable waste of time.

[6] References to "pre-shift" briefing in these relevant cases actually refer to what the parties in this case characterize as "pass-down" briefing that occurs on post between the shift leaving and the shift that is arriving for work. The terms "pre-shift" and "pass-down" are used interchangeably for purposes of this discussion.

> The Court concludes that this briefing is an integral part of and indispensable to the officers' principal activities, *see Steiner*, 350 U.S. at 254, 76 S.Ct. 330, of maintaining custody and control of, patrolling designated areas of, and ensuring the security of City property. The mandatory briefing period therefore constitutes "work" even if the actual briefing took less than five minutes.

*Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1229 (D.N.M. 2012).

Defendant relies on the other District of New Mexico case, *Bustillos v. Bd. Of Cty Comm'rs,* in which United States District Judge James O. Browning concluded, *inter alia*, that the pass-downs between outgoing and incoming city emergency dispatchers (referred to as "pre-shift briefings" in that case) were not integral and indispensable.  310 F.R.D. 631 (D.N.M. Oct. 20, 2015), No. Civ. 13-0971 JB/GBW, Mem. Op. (Doc. No. 66) at 47.  In that case, Judge Browning found that "the incoming dispatchers could instead read the desk logs" rather than participate in verbal briefings.  The court further noted that plaintiff had not presented evidence that the pre-shift briefings contributed to either efficiency or safety—in which case the court would have been "more inclined to find the briefings integral and indispensable." *Bustillos,* Doc. 66 at 39 (citing *Busk,* 135 S.Ct. at 520) (explaining that "an activity is 'indispensable' to another, principal activity only when an employee could not dispense without impairing his ability to "perform the principal activity safely and effectively.").

However, after the parties in this lawsuit briefed the instant motion, the Tenth Circuit reversed that part of Judge Browning's ruling which granted summary judgment for the county on the pass-down briefing claim, and concluded that an incoming dispatcher needed to obtain information about the previous shift in some manner and arrive earlier to work in order to get this information, whether it was in the form of verbal briefing or reading the outgoing dispatcher's notes.  *Jiminez (Bustillos) et al v. Bd. Of Cty Commissioners of Hidalgo Cty.,* No. 15-2213, Order & Judgment (Sept. 14, 2017); *see* Doc. 211, Pltff's Notice of Supp. Copy of Case, citing 2017 U.S. App. LEXIS 17780).  The Tenth Circuit affirmed Judge Browning's other

rulings but found that with regard to the pass-down briefing issue, the plaintiff should be compensated for those extra minutes she was required to be at her job for the briefing.  *Id.,* 2017 U.S. App. LEXIS 17780, *3 ("No one argues that it is not integral and indispensable for the incoming dispatcher to obtain this information in some manner before beginning her shift.").

The Tenth Circuit also rejected the county's reliance on the *de minimis* defense. Importantly, that ruling turned on the finding that the county, by its written policy, required dispatchers to be at work five minutes before every shift, and thus the time spend in briefings constituted a "fixed or regular working time," and a "practically ascertainable period of time" the employee was required to spend on those duties.  *Id.* at **4-5.  The Tenth Circuit acknowledged that an employer may disregard insubstantial and inconsequential amounts of time "where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration."  *Id.,* at *4 (citing 29 C.F.R. §785.47), but noted that an employer may not "arbitrarily fail to count as hours worked any part, however small, of the employee's **fixed or regular working time or practically ascertainable period of time** he is regularly required to spend on duties assigned to him."  *Id.* (citing 29 C.F.R. §785.47) (emphasis added).  The Court of Appeals therefore concluded that a trier of fact in that case could make findings about how much overtime the county owed the dispatcher and a *de minimis* defense was not appropriate.

In light of this procedural turnaround in *Bustillos,* Defendant cannot rely on that case to argue that pass-down briefings are not compensable as a matter of law.  Nor is Defendant justified in advancing an analysis that does not take into account whether an activity is employer-required in order to determine whether an activity is "integral and indispensable" to a principal activity. *Cmp. Barrentine v. Arkansas-Best Freight System, Inc.,* 750 F.2d 47, 50 (8th Cir. 1984)

(the "only activities excluded from FLSA coverage are those undertaken [for the employee's] own convenience, not being required by the employer").

In the instant case, it is undisputed that both the relief officer and the outgoing officer must be present in order for pass-down to occur, and also that the outgoing officer does not leave his post before pass-down is completed. One can reasonably infer from the undisputed facts not only that an officer's presence for pass-down is an employer-required activity, but also that pass-down briefings are integral to the efficient performance of the officers' job duties maintaining safe custody of the inmates and the security of the facility. *See Busk*, 135 S.Ct. at 518 (comparing the compensable activity of meatpacker employees sharpening their knives "because dull knives would 'slow down production' on the assembly line," "affect the appearance of the meat as well as the quality of the hides," "cause waste" and lead to "accidents," with the noncompensable activity of donning protective gear because such waiting was "two steps removed from the productive activity on the assembly line").

The Court therefore finds that the pass-down briefings that occur on post are integral and indispensable to Plaintiffs' principal activities, and are therefore compensable. The only remaining question is whether any discrepancy between what Plaintiffs are paid and their scheduled start/end times is *de minimis,* which the Court will address below.

E.    Walking to and from post

In Fact 22, Defendants state that the walk from central control to the posts can take anywhere from one to seven minutes. Plaintiffs claim there is a "genuine dispute" of material fact on this issue, but they offer nothing to back up this claim. Plaintiff provides references to declarations from numerous Plaintiffs, but in the end the facts on this issue presented by Defendant are never refuted. Nowhere in Plaintiffs' response to Defendant's Fact 22 is there any

evidence suggesting that the walk from central control to the various posts is a one-to-seven minute walk.

Plaintiffs also claim that the walk from central control to the posts is compensable because it occurs after first principal activity of shift and because walking requires vigilance because they are inside a prison.  However, the Court has concluded that, for summary judgment purposes, the first principal activity of shift occurs *after* the officers arrive at their posts, and potentially when they arrive just prior to the pass-down briefing.  Also, none of the walking done by officers to and from their posts involves inmates, so that this particular walk can be considered part of the officers' principal activities.

The Portal-to-Portal Act expressly excludes "walking . . . to and from the actual place of performance of the principal activity or activities" as a compensable activity.  29 U.S.C. §254(a)(1).  Under Tenth Circuit precedent, the time spent in walking to one's place of work, which is normally non-compensable, does not become compensable under the Portal-to-Portal Act "just because during that travel the employee must carry an item necessary for performance of the work if carrying the item adds negligible time or inconvenience to the travel."  *Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1249 (10th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016) (emphasis added).  Plaintiffs offer no evidence to refute any of Defendant's facts on this issue, and the Court finds no reason to except this activity from the non-compensable categories of preliminary activities described in the statute.  *See Castaneda v. JBS USA, LLC*, 819 F.3d 1237, 1242 (10th Cir. 2016), *as amended on denial of reh'g and reh'g en banc* (May 3, 2016) (commute time and walking to and from the employee's work station is ordinarily noncompensable).  Defendant is therefore entitled to summary judgment on this issue.

F.     Post-Shift Activities

The analysis above works in reverse after an officer's shift, so that the Court's findings herein regarding preliminary or pre-shift activities apply to the same activity post-shift.

## II.    *De Minimis* **Defense**

Defendant advances a second theory for summary judgment, contending that any discrepancy between what Plaintiffs are paid and their scheduled start/end times is *de minimis*. Defendant argues that the amount of daily time at issue is less than ten minutes, because it takes about ten minutes for an officer to walk from the time clock to his post, and because of MTC's ten-minute time adjustment window.  Plaintiffs acknowledge that the officers get paid for time beyond an eight-hour shift when they either arrive early or leave late by more than ten minutes. What they take issue with is that officers do not get paid when clock in and clock out times *added together* for the day exceed the 10 minute threshold.  Plaintiffs also argue that, as a matter of law, Defendant cannot avail itself of the *de minimis* defense.

The Court has determined that only the pass-down briefing is arguably compensable under the FLSA, subject to fact finding at trial, and has granted summary judgment to Defendant on the issue of compensability for activities other than pass-down briefings which occur on post. This ruling also results in a finding that none of the time spent walking *on the way to the post* is compensable, since Plaintiffs have presented no evidence to preclude summary judgment on the compensability of any of the activities done along the way.  Defendant contends that pass-down lasts anywhere from two to five minutes.  Deft's Fact 27.  Plaintiffs do not dispute this particular fact, but instead claim that the exact time required for pass-down is recorded, but this makes no sense at all since it is undisputed that the time clocks are not located on posts, where pass-down occurs.   Because the "*de minimis*" defense applies to "otherwise compensable" activities, the

only time segment at issue here is the time attributed to pass-down briefings.  *See Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998).

Based on the Court's findings above, then, the only remaining questions are (1) whether Defendant can rely on a *de minimis* defense at all, and if so, (2) whether the time spent in pass-down briefing (assuming that it is a compensable activity) is *de minimis*.

A.   Relevant Law Regarding *De Minimis* Defense

The "*de minimis*" defense applies to compensable activities where they are so insubstantial that it should not be considered in the work week.  It is only when an employee is required to "give up a substantial measure of his time and effort that compensable working time is involved." *Reich v. Monfort, Inc.*, 144 F.3d 1329, 1333 (10th Cir. 1998) ("otherwise compensable preliminary and postliminary activities are not included in calculating hours worked in a week if the period of time spent on an activity is so "insubstantial and insignificant" that it ought not be included in the work week) (emphasis added).  Under the *de minimis* doctrine, "insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded." *Castaneda*, 819 F.3d at 1242–43; *Brubach*, 893 F. Supp. 2d at 1235 (D.N.M. 2012). However, an employer "may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."  *Id.* (citing *Reich v. Monfort,* 144 F.3d 1329, 1333–34 (10th Cir.1998); *Brubach v. City of Albuquerque*, 893 F. Supp. 2d 1216, 1234–35 (D.N.M. 2012) (noting that that the *de minimis* exception excludes from FLSA compensability only insubstantial or insignificant time "beyond the scheduled working hours." *Anderson,* 328 U.S. at 692–93, 66 S.Ct. 1187; 29 C.F.R. § 785.47.  For example, in *Bruback,*

Judge Vazquez concluded as a matter of law that a mandatory five-minute pre-shift briefing [pass-down briefing] period does not constitute time "beyond the scheduled working hours" and that it "indeed constitutes part of an employee's fixed or regular working time."  893 F.Supp.2d at 1235.  As a result, that time was not subject to the *de minimis* exception.  *See Bustillos v. Bd. County Comm'rs*, No. Civ. 13-0971 JB/GBW, Mem. Op. (Doc. No. 66) at 47 (D.N.M. Oct. 20, 2015) (finding that the county could not disregard five minute briefing period as *de minimis* because the regulation allowing an employer to disregard insubstantial and inconsequential amounts of time "applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration"), *reversed on other grds.*, *Bustillos v. Bd. Of County Comm'rs,* No. 15-2213, Order & Judgment (Sept. 14, 2017), citing 29 C.F.C. §785.47.

As of the date of filing of this opinion, the Tenth Circuit has declined to announce a bright-line test for a *de minimis* defense.  In *Reich v. Monfort, Inc.,* the circuit relied on a test articulated by the Ninth Circuit in *Lindow v. U.S.*:

> [a]n important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work. There is no precise amount of time that may be denied compensation as *de minimis*. No rigid rule can be applied with mathematical certainty." Id. at 1062. Defendant points out that the instant case involved ten-minute periods, and that *Lindow* noted that "[m]ost courts have found daily periods of approximately 10 minutes *de minimis* even though otherwise compensable." *Id*. (citing cases). But we have cited with approval cases finding that "as little as ten minutes of working time goes beyond the level of *de minimis* and triggers the FLSA.

*Reich v. Monfort, Inc.,* 144 F.3d 1329, 1333 (10th Cir. 1998) (*"Monfort"*) (citing *Lindow,* 638 F.2d 1059 (9th Cir. 1984)).  Instead of a bright-line approach, the Tenth Circuit has adopted a test where the district court must evaluate three factors (the "*Lindow/Monfort"* factors), in addition to the amount of time spent on the additional work, in order to determine whether otherwise compensable time is *de minimis*:

> 1) the practical administrative difficulty of recording the additional time;

> (2) the size of the claim in the aggregate; and

> (3) whether the claimants performed the work on a regular basis.

*Monfort,* 144 F.3d at 1333-34.[7] The Tenth Circuit also noted that the first part of the test is the setting out of the amount of time and then proceeding to evaluate whether that time is *de minimis* under the three factors.  *Id.*

B.   Reliance on *De Minimis Defense* as a Matter of Law

Plaintiffs contend that Defendant is essentially barred from relying on a *de minimis* defense for three reasons: (1) the defense is inapplicable in an FLSA case; and (2) MTC's electronic time-tracking and pay-to-the-minute payroll system is incompatible with the *de minimis* defense.

(1)   *Supreme Court's Decision in Sandifer*

Plaintiffs argue that Defendants cannot use the *de minimis* defense in this case because it is an FLSA case, based on the decision by the United States Supreme Court, *Sandifer v. U.S. Steel Corp.,* 134 S.Ct. 870 (2014).  In that case, steelworkers brought a collective action under the FLSA alleging that their employer failed to compensate them for time spent donning and doffing protective gear. The collective-bargaining agreement in that case provided that "time spent in changing clothes" at the beginning or end of each workday" was noncompensable. Plaintiffs rely on the Supreme Court's observation in *Sandifer* that the *de minimis* doctrine "does not fit comfortably" within the FLSA statute . . . ."  134 S.Ct. at 873.  However, the Supreme Court never announced that the *de minimis* defense was unavailable in FLSA cases; it simply

---

[7] In *Monfort,* the Tenth Circuit found this question to be a "close call."  144 F.3d at 1334.  The court found that it would be "administratively difficult" to record the actual time taken by each worker in a meat processing plant to take on and off a variety of safety gear, which weighed in favor of finding that time noncompensable.  However, because the other two factors (aggregate amount and regularity of additional work) weighed in favor of the employees, the court agreed with the district court's conclusion that the work was not *de minimis* and therefore was compensable.

"doubt[ed] that the *de minimis* doctrine can properly be applied to the *present case.*" 134 S.Ct. at 880 (emphasis added).  The question in that case was not whether the amount of time at issue should be disregarded as *de minimis,* but whether time spent in a preliminary activity should properly be considered part of the "gross workday" and thus outside of the provision in the collective bargaining agreement governing "time spent in changing clothes." 134 S.Ct. at 880.  In the end, the court concluded that the donning and doffing of safety glasses and earplugs was in fact minimal, and plaintiffs were sent back to the collective bargaining table to negotiate that issue in the context of the clothes-changing provision.  The reasoning in *Sandifer* was also complicated by the fact that a collective bargaining agreement was the starting point for the parties' understanding of what activities were considered "work" and therefore compensable under the FLSA.   There has been no mention of a collective bargaining agreement here, and so the court's concern in *Sandifer* regarding the applicability of the *de minimis* doctrine is not an issue here.  The Court therefore finds that Defendant is not barred from asserting the *de minimis* defense based on *Sandifer* as a matter of law.  *See Castaneda,* 819 F.3d at 1249 (recognizing *Sandifer's* concern with applying the *de minimis* test, but noting that the on-the-whole test used in that case is "rather similar" to the *de minimis* test.)

> (2)     *Time-Tracking System*

Plaintiffs also claim that Defendant is precluded from using the *de minimis* defense because MTC has a time-tracking and pay-to-the-minute payroll system.    However, this argument fails because it assumes that Plaintiffs' use of the time clock between the metal detector and the key collection box mark the start and end of their workday, but there has been no evidence presented that compensable time is triggered by the time clock, nor is there any relevant law to support that notion.  Plaintiffs themselves recognize that the time clocks are not

34

reliable as an accurate indicator of time worked (even assuming that start/end workday times were the same as clock in/out times), either because there are occasions where the clocks malfunctioned, or because officers "forget or are unable to clock in or out for some reason." Doc. 190 at 9; *see also* Pltffs' Resp. to Deft's Fact 25.  Therefore, MTC's time-tracking system does not preclude Defendant from asserting a *de minimis* defense.

      C.    <u>Analysis for *De Minimis* Issue Based on Evidence</u>

Plaintiffs also contend that the evidence presented on summary judgment establishes that the *de minimis* defense does not apply to this case.  The Court has granted summary judgment to Defendant on the issue of whether pass-down briefing is compensable under the FLSA but now considers whether Defendant is entitled to a *de minimis* defense on that issue.

An employer "may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."  *Id.* (citing *Reich v. Monfort,* 144 F.3d 1329, 1333–34 (10th Cir.1998).  Defendant may not rely on a *de minimis* defense if the time officers spend in the pass-down briefings are "fixed or regular" or are "practically ascertainable." In this case, some officers receive briefing when they show up early for their assigned shifts; others receive briefing even though they show up late.  Further, because there is no way to accurately determine the exact amount of time spent in these briefings, the time periods are not "practically ascertainable."  Thus, Defendant is not barred from asserting the *de minimis* defense. *See Bustillos,* 2017 U.S. App. LEXIS 17780, at *5 (rejecting defendant's *de minimis* defense based on county's written policy requiring dispatchers to be at work five minutes before every shift, and thus the time spend in briefings constituted a "fixed or regular working time," and a "practically ascertainable period of time" the employee was required to spend on those duties).

Under the *Lindow/Monfort* analysis, the Court first considers the amount of time at issue. Under Tenth Circuit precedent, as little as ten minutes of working time per day might be more than *de minimis. See Monfort,* 144 F.3d at 1333.  Here, viewing the facts favorably to Plaintiffs, the greatest amount of uncompensated time per day is eight minutes total per shift, but this captures time spent in activities which the Court has already found to be noncompensable because Plaintiffs' calculations include *all* time from the point of clocking in/out.  *See* Doc. 160 at 27; Resp. at 21-22 (Pltffs' Add'l Fact Z).[8]  Also, these calculations are made using time periods shown on the timecards from clock-in before shift start (which favors officers when they clock in early) and from shift end to clock out (which favors officers who leave post early but are still paid from the top of the hour at shift end).

Because these time representations are spurious, the Court can safely find that the total addition amount of time spent of "work" is substantially less than the top figure (eight minutes per shift) offered by Plaintiffs.

### (1)    Administrative Difficulty of Recording Additional Time

It is undisputed that pass-down briefings take anywhere from two to five minutes.  It is also undisputed that the exact amount of time spent in pass-down briefings is not recorded anywhere.  There are no time clocks on post, which is where pass-down occurs, nor would it be practical to place time clocks at every post.  This means there is no way to accurately track what time officers arrive or leave posts before and after pass-down briefings.   MTC would have to place an administrator at each of the 46 posts ready to note the exact time oncoming officers begin work and outgoing officers stop work.  The first "*Lindow/Monfort*" factor therefore favors Defendant.

---

[8]  Plaintiffs offer eight minutes per shift during calendar year 2013, but other calendar years are even less, from three to seven minutes per shift—calculated from clock in/out times, and not reflecting the actual time officers spent in pass-down briefings.

*(2)     Aggregate Amount*

Defendant claims that the aggregate sum is based on Plaintiff Rosales' figures at $355,478.00 (referring to Plaintiff Rosales' deposition testimony), but that the "actual aggregate figure" is "necessarily substantially less." Doc. 199 at 23.   Plaintiffs claim that on an individual basis, an officer loses an average of more than 50 hours of overtime per year, although it is not clear how Plaintiffs arrive at this number.   Doc. 190 at 51.  Defendant puts this figure in perspective, pointing out that the *Monfort* case involved more than 6,000 employees and $1,570,019.34 in unpaid overtime, where this case involves 122 plaintiffs, and the outside figure of $355,478.00 refers to compensation sought for activities which the Court has found are not compensable under the FLSA, as well as for pass-down briefings.  Therefore, the aggregate amount of compensable time is also in MTC's favor.

*(3) Regular Basis*

The final *Monfort/Lindow* factor concerns the regularity of the work.  The only activity at issue here is the pass-down briefing.  It is apparent that all officers receive pass-down briefing, but there is no fixed time any of them *must* show up on post for these briefings. While some officers arrive on post early and stay late, by the same token some arrive on post late and leave post early too.  For the latter group of Plaintiffs, there is regularly no unpaid work and they are more than fully compensated.

Also, as Defendant notes, the analysis must also take into account how MTC's ten-minute adjustment window affects any alleged uncompensated time.  MTC contends that for Plaintiffs who arrive on post and begin working a few minutes early or stay on post working a few minutes late, the *de minimis* doctrine favors a summary judgment ruling in favor of Defendant.   Because of the ten-minute adjustment window, the slower the Plaintiff is in getting

from the time clock to post, the less unpaid work time he could claim.  Conversely, the fastest Plaintiff would have the most potential unpaid time.  *See* Deft's Mot. & Reply, Doc. 160 at 26 & n.4; Doc. 199 at 22.  As Defendant observes, even using check in/out times that are most favorable to Plaintiffs, the ten-minute adjustment window serves to favor officers who are slower to arrive at post because these officers are still paid for their full eight-hour shift even if they arrive late to their shifts up to ten minutes and leave up to ten minutes before their before their shift ends.

The Court finds this last factor to balance evenly between the parties, but that on the whole, the *Monfort/Lindow* factors weigh in favor of Defendant and Defendant is entitled both legally and factually to the *de minimis* defense.

## IV.    Estoppel Argument Based on MTC's Process for Claiming Unpaid Work Time

Defendant's last argument on summary judgment is that Plaintiffs' claims are barred to their failure to use MTC's time adjustment process, which is a system for correcting compensation errors.  The Court need not address this argument, having found in favor of Defendant on the issue of compensability of the activities for which Plaintiffs' seek compensation.

## V.    State Law Claims

Plaintiffs allege that in addition to violating the FLSA, Defendant also violated the overtime provisions of New Mexico's Minimum Wage Act ("MWA") by failing to pay officers the detention officers for all hours worked in excess of the 40 hours per workweek.  *See* NMSA § 50-4-22(D); Doc. 3 (Am. Compl.), ¶66. As its last argument, Defendant contends that summary judgment should be granted on these state claims, arguing that the result pursuant to federal law should also apply to these claims.

The Court would have expected some response from Plaintiffs' counsel regarding this last argument on the state law claims, but as Defendants also observe, the only reference to state law claims is in a footnote in the response, noting that the legal standard for FLSA claims "are similar to, or higher, than asserting claims" under the MWA." Doc. 190 at 33, n.30. Plaintiffs offer no legal authority for this statement. However, taking the language in the footnote at face value, it appears that Plaintiffs acknowledge and concede that if summary judgment was granted to their federal claims, it would also apply to the state law claims.

The Court finds that except for the pass-down briefing done between shifts at the various posts, all other activities for which compensation is claimed are either preliminary or postliminary to the officers' principal work activities and are therefore not subject to compensation. On the sole activity of pass-down briefings which the Court finds to be "integral and indispensable" to the officers' "principal activities," the Court further finds and concludes that the *de minimis* defense applies. The Court finds no legal or factual bar to applying its findings and conclusions regarding Plaintiffs' FLSA claims to the state law claims asserted under the MWA. In fact, there is some basis for looking to the case law regarding the FLSA for interpretive guidance where the MWA and the FLSA contain similar provisions. *See, e.g., Segura v. J.W. Drilling, Inc.*, 2015-NMCA-085, ¶ 15, 355 P.3d 845, 850, *cert. denied,* 2015-NMCERT-008, ¶ 15, 369 P.3d 368 ("it is appropriate to look to decisions of federal courts determining the meaning of "employ" in the federal statute, and to consider those federal decisions as persuasive authority in deciding the meaning of "employ" in the New Mexico statute). Also, as Defendant points out, New Mexico would apply the same estoppel-like concept when employees fail to follow grievance procedures. *See Lucero v. Bd. Of Regents,*

2012-NMCA-055, 278 P.3d 1043 (requiring employees to comply with the mandatory internal grievance procedure before filing suit for breach of contract).[9]

Defendant acknowledges that the MWA contains no analog to the federal Portal-to-Portal Act, and so interpretations of the Portal-to-Portal Act are viewed as "unhelpful" in considering state law compensation claims brought under the MWA.  *Segura*, 2015-NMCA-085, ¶ 15.  At the same time, however, New Mexico's "legislative silence" on Portal-to-Portal Act provisions (such as travel time, which is not an issue in this case) does not mean that such time is compensable under state law.   Moreover, as previously mentioned, the Portal-to-Portal Act did not change earlier descriptions of the term "work" as interpreted under the FLSA and the Court relied on those interpretations here in order to determine whether the activities in question were an "integral and indispensable" to Plaintiffs' principal activities.  *See Steiner v. Mitchell*, 350 U.S. 247, 254 (1956) (in passing the Portal-to-Portal Act, Congress still intended for an employee's activities to fall within the protection of the FLSA "if they are an integral part of and are essential to the principal activities of the employees").  Plaintiffs allege under both the FLSA and the MWA that Defendant failed to pay them for time "worked" over the 40-hour workweek, and the Court's findings that only the pass-down briefings were compensable under the FLSA necessarily apply to Plaintiffs' state law claims.

The Court similarly may rely on Defendant's *de minimis* defense for the one activity found to be compensable.  The *de minimis* concept has been applied to "otherwise compensable" preliminary and postliminary activities where the period of time spent on an activity is so "insubstantial and insignificant" that it ought not be included in the work week).  *Reich v.*

---

[9] The Court did not address Defendant's estoppel argument because of the Court's disposition of Plaintiffs' claims on summary judgment.

*Monfort, Inc.*, 144 F.3d at 1333.  Plaintiffs' state law claims involve identical time increments, and the Court finds no reason to avoid the *de minimis* doctrine here as well.

For these reasons, Defendant is entitled to summary judgment on all of Plaintiffs' state law claims under the MWA.

**VI.    Plaintiffs' Opposed Motion for Leave to Supplement a New Timekeeping Policy Issued by Defendant on September 1, 2017 to the Record for Four Pending Motions (Doc. 208).**

While the Court was preparing this opinion for final draft, Plaintiffs filed an Opposed Motion for Leave to Supplement a New Timekeeping Policy Issued by Defendant.  Doc. 208. Plaintiffs claim that this new policy establishes that there is no administrative burden to record time, and contradicts MTC's arguments related to the *de minimis* defense.  Plaintiffs also contend that MTC's implementation of the "new" Timekeeping Policy is a "written recognition" by MTC that time spent picking up keys, radios and weapons is compensable and further, that the policy is evidence of a willful violation because Defendant implemented it "after MTC was informed" that its prior practice violated the law.  Doc. 208 at 3-4.  In relevant part, the policy states:

> You remain prohibited from picking up keys, radios, and/or weapons until you have clocked in and must return such items prior to clocking out . . .
>
> You are prohibited to clock in more than five or ten minutes . . . prior to your scheduled start time. . .
>
> You are also prohibited to clock out more than five or ten minutes . . . after your scheduled shift end time . . . .

Doc. 208-1.  Plaintiffs also claim that end that the new policy is also evidence of similarity among putative class members.  The Court rejects all of Plaintiffs' arguments.  The fact that MTC updated its Timekeeping policy (as it has periodically, *see* Pltffs' Exs. B & C) does not constitute an admission that the collection of keys and equipment is compensable under the FLSA or the Portal-to-Portal Act.

41

The Court has reviewed the updated Timekeeping Policy and finds that it adds nothing at all to Plaintiffs' position on either Defendant's *de minimis* defense or Plaintiffs' rounding practice argument. First, the Court has rejected Plaintiffs' "rounding policy" claim and has found that this is not a "rounding" case, so the updated Timekeeping policy has no relevance to that claim. Second, the supplemental exhibit provides no reason for the Court to modify its rulings in this opinion concerning its ruling on the *de minimis* defense. The Court has determined that "work" does not begin until pass-down briefing occurs at the posts where most of the inmates live, not at the time clocks. Thus, the new Timekeeping policy does not make tracking work time any less difficult than it was before. In fact, the Court agrees with Defendant that the September 2017 Memo demonstrates the administrative difficulties posed by the workplace at issue here. Last, the Court need not address Plaintiffs' claim that the new policy demonstrates similarity among the putative class members, since summary judgment has been granted to Defendant on liability.

Accordingly, Plaintiffs' Opposed Motion for Leave to Supplement a New Timekeeping Policy Issued by Defendant on September 1, 2017 to the Record for Four Pending Motions (Doc. 208) is hereby DENIED.

## CONCLUSION

In sum, the Court finds and concludes that Defendant is entitled to summary judgment on all of Plaintiffs claims, specifically:

(1) The Court agrees with Defendant that Plaintiffs' "rounding policy" theory does not apply in this case, and therefore the Court rejects Plaintiffs' illegal "rounding" argument as a basis for Plaintiffs' claims in this lawsuit;

(2) The Court finds and concludes that the only pre- and post-shift activity that is compensable under the FLSA is the pass-down briefings on post.  Defendant is denied summary judgment on that sole issue;

(3) However, the Court also finds and concludes that Defendant is not precluded as a matter of law from asserting the *de minimis* defense, and further finds that any discrepancy between what Plaintiffs should be  paid and their scheduled start/end times is *de minimis*, thereby granting Defendant summary judgment on all of Plaintiffs' claims under the FLSA;

(4)  The Court need not address Defendant's estoppel argument, having found in favor of Defendant on the issue of compensability of the activities for which Plaintiffs seek compensation;

(5) The Court's findings on Plaintiffs' FLSA claims with regard to pre-and post-shift activities also apply to Plaintiffs' state law claims, and based on those findings, Defendant is entitled to summary judgment on Plaintiffs' state law claims under the New Mexico Minimum Wage Act;

(6) The Court denies Plaintiffs' Opposed Motion for Leave to Supplement a New Timekeeping Policy Issued by Defendant on September 1, 2017 to the Record For Four Pending Motions, **Doc. 208** because the supplemental exhibit would not provide any reason for the Court to modify any of the findings in this decision;

(7)  Based on the Court's review of Plaintiffs' claims asserted in the Amended Complaint, this Memorandum Opinion and Order disposes of all of Plaintiffs' claims in their entirety.

**THEREFORE, IT IS ORDERED** that Defendant's Opposed Motion for Summary Judgment on Liability **(Doc. 160)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order.

*A Rule 58 Judgment shall issue separately*.

_____
UNITED STATES DISTRICT JUDGE